## BOZEMAN *vs.* ALLEN.

[ACTION ON PROMISSORY NOTE.]

1. *Contract, consideration of; what renders void as to immediate parties to.*— When a part of the consideration of a contract is illegal, the contract is void as between the immediate parties to it, who have knowledge of the illegality; and as between these it can not be enforced.—32 Ala. 288.

2. *Same; as to when illegal consideration will not avoid contract.*—But if such contract be a negotiable promissory note in the hands of an indorsee who is a *bona fide* holder for valuable consideration, without knowledge of the illegality, this rule of law does not apply. Such indorsee may recover on such note, notwithstanding the illegality, (3 Kent, 79, 80,) unless some statute declares the contract a nullity *ab initio.*

3. *Negotiable note, given in part for Confederate money; void as to immediate parties to note.*—A negotiable promissory note, the consideration of which is partly a loan of Confederate treasury-notes and partly a sale of goods, is void as between the immediate parties to it, but it is valid in the hands of an innocent indorsee, who is a *bona fide* holder for valuable consideration, without notice of the illegality, unless it be made wholly void by statute in the hands of such indorsee.

APPEAL from Circuit Court of Hale.

Tried before Hon. M. J. SAFFOLD.

Bozeman v. Allen.

The facts are sufficiently stated in the opinion.

SOMERVILLE & McEACHIN, for appellant.
PITTMAN & WALLER, *contra*.

PETERS, J.—On the 1st day of May, in the year 1870, Allen, the appellee, commenced suit by summons and complaint against Bozeman, the appellant, in the circuit court of Hale county. The complaint contains two counts. One is upon a stated account for $3,017 18, rendered on September 21st, 1863. The other is a count upon a promissory note executed by the defendant on the *first* day of September, 1863, payable one day after date to the order of W. W. Allen & Co., for the sum of $5,817 18, which note was indorsed by the payees to the plaintiff. In answer to the complaint, the defendant pleaded three pleas in short by consent: 1. The general issue; 2. Illegal consideration; 3. Statute of limitations of six years. Issues were taken upon all these pleas, and the parties went to trial on the issues thus made. The cause was submitted to the jury upon the evidence of the note and an agreed statement of facts, which was in the following words, that is to say: "Of the amount of the note sued on, which is for $5,817 18, the sum of $2,800 is Confederate money or treasury-notes advanced or loaned by W. W. Allen & Co., the payees of said note. A part of said Confederate money was advanced in 1863, and a part in 1862. The balance of said note, to-wit, three thousand and seventeen dollars and eighteen cents was for a good consideration, being for goods, &c., sold and money advanced to defendant, by Allen & Co., for several years before the war, to-wit, between the years 1854 to 1858. The said sum of twenty-eight hundred dollars was paid to third persons on orders or drafts drawn in favor of third persons by said Bozeman on Allen & Co., and were charged to him as money paid to his use and account."

This was all the evidence; and on this evidence the court charged the jury:

1. "That the plaintiff is entitled to recover the amount

of the note sued on, less $2,800; that is to say, he is enti-
tled to recover $3,017 18, with interest thereon from the
maturity of said note."

This charge was excepted to by the defendant; and there-
upon the defendant moved the court to give the following
charges:

1. "If the jury believe the evidence, they must find for
the defendant."

2. "If the jury believe that a part of the consideration
of the note sued on was Confederate States treasury-notes,
or Confederate money, loaned by the payees to defendant,
then the said note is illegal and void, and there can be no
recovery in this action under the first count."

These charges were also refused by the court, and the
defendant excepted.

In the case of *Hickman v. Jones*, (9 Wall. 197–200,) it is
said by the highest court of the Union, that "the rebellion
out of which the war grew was without any legal sanction.
In the eye of the law, it had the same properties as if it
had been the insurrection of a county or smaller municipal
territory against the State to which it belonged. The pro-
portions and duration of the struggle did not affect its char-
acter. Nor was there a rebel government *de facto*, in such
a sense as to give any legal efficacy to its acts. It was not
recognized by the national, nor by any foreign government."
It was, then, but an organized insurrection to separate a
portion of the States of the Union from the territory of
the Union. In whatever light such an effort may be re-
garded as a revolutionary act, it was in point of law illegal
and criminal; and every act in aid of it is necessarily im-
pressed with the same illegal character. The history of
the large quantities of what is called Confederate treasury-
notes, or Confederate money, issued and put in circulation
by this organization, called "The Confederate States Gov-
ernment of America," is too well known to doubt that these
treasury-notes were so issued and put in circulation to aid
the success of the rebellion. They were not issued for any
of the peaceful purposes of life or of peaceful commerce.

For these purposes they were not needed. The specie and the bank currency of the seceding States was amply sufficient for all these demands. They were then issued solely as a war currency, and for the military exigencies of the so-called Confederate States. This must have been well known to all who handled them. To circulate them gave them currency, and to give them currency was to aid the cause that called them into being. Their circulation was an illegal act. For this reason, among others, this court has decided that the loan of them was not such a consideration as would support a valid contract. But this was where the whole consideration of the contract was a loan of Confederate money.—*Lawson v. Miller*, 44 Ala. 616. A like conclusion has been reached by the supreme court of Tennessee.—*Potts et al. v. Gray*, 3 Cald. 468; *Hale v. Sharp et al.*, 4 Cald. 275. But in this case, the consideration of the note sued on is not based wholly upon a loan of Confederate treasury-notes. A larger part of the consideration was legal and sufficient. Does this alter the character of the contract? From a very early day it has been repeatedly decided, in the courts of this country and in England, that it does not. Where a part only of the consideration of a contract is illegal, the whole contract is void and can not be enforced.—*Waite v. Jones*, 1 Bing. New Cases, 656; *Jones v. Waite*, 5 Bing. New Cases, 341; *Scott v. Gillmore*, 3 Taunt. 226; *Bingham v. Potter et al.*, 14 Gray, 522; *Pettit's Adm'r v. Pettit's Dist'r*, 32 Ala. 288; 1 Par. Notes and Bills, 217; 1 Par. Contr. p. 456, 5th ed. 1864. This is the settled law as between the immediate parties to the contract, who have knowledge of its illegality; but it changes when the instrument passes into the hands of a *bona fide* holder for valuable consideration, without notice of its illegality, except in such cases as the contract is made utterly null and void by statute.—Chit. Bills of Ex. p. 82 (marg.), 12 Am. ed. by Perkins, 1854; 3 Kent, 79, 80; *Hanrick v. Andrews*, 9 Por. 10, 11; *Swift v. Tyson*, 16 Pet. 15. The plaintiff in the court below is an indorsee, and it does not appear that he became the holder of the note after it

became due. The note is negotiable, and *prima facie* Allen, the plaintiff, is a *bona fide* holder.—3 Kent, 77, 79; Story's Bills of Ex. § 60. In such a case, his right to recover can not be defeated by the illegality of consideration which would have barred a recovery at the suit of the payees against the maker. In this view of the law, the charge given and excepted to by the defendant below was only too favorable to him, under the facts set out in the record. And the charges asked were properly refused.

The judgment of the court below is, consequently, affirmed.

NOTE BY REPORTER.—At a subsequent day of the term, the appellant applied for a rehearing. This application did not come into the Reporter's hands. The following response was made by

PETERS, J.—The court is of opinion that the rehearing should be allowed. There was a plea of illegal consideration, and some evidence to sustain it. This, under the law as settled in this State, puts the *onus* of proof on the plaintiff to show that he is an indorsee and holder for valuable consideration.—*Battle v. Weems*, 44 Ala. R. 105, and cases there cited. The original opinion in this case is, therefore, modified to this extent.

The judgment of the court below is, therefore, reversed, and the cause is remanded for a new trial.