[Claghorn, Assignee, v. Lingo.]

# Claghorn, Assignee, *v.* Lingo.

*Action for Breach of Agreement.*

1. *Evidence ; what admissible.*—In an action to recover damages for the breach of an agreement to deliver cotton, in payment of the price of a fertilizer represented to be "Sea Fowl Guano," and greatly beneficial to crops, the defendant, resisting recovery on the ground that the article purchased was not what he ordered and was worthless, may testify as to the manner and effect of his use of it in the cultivation of the crop.

2. *Warranty ; what constitutes.*—A bare representation or assertion of the quality of the thing sold, if so understood and intended by the parties, will amount to a warranty; hence, when there is evidence that such was the intention and understanding of the parties, though there was no express demand for a warranty, a charge that the "purchaser must buy on his own responsibility or ask a warranty," is properly refused, as tending to take away from the jury all consideration of evidence of a warranty voluntarily made or arising out of the circumstances attending the transaction.

3. *Charge; what propeely refused.*—Whether or not written or printed pamphlets "warranted guano to produce beneficial results," is a question of law for the decision of the court, and a charge which submits that question to the jury is properly refused.

APPEAL from Henry Circuit Court.

Tried before Hon. HENRY D. CLAYTON.

The appellant, Rufus S. Claghorn, as the assignee of Boit & Co., brought this action against the appellee, Richard B. Lingo, to recover damages for a breach of the following agreement ;

"On or before the 1st of November next, I, Richard B. Lingo, the subscriber, of the county of Henry, State of Alabama, promise to pay Boit & McKenzie or order, four hundred pounds of lint cotton, to class low middlings, ginned and neatly packed, and delivered to them or their agent at Ft. Gaines, Ga., or sixty dollars in currency, as I may elect, at maturity of this agreement, for fertilizer furnished me, and this agreement constitutes a lien or mortgage within itself upon said four hundred pounds of cotton, and it is so confessed and understood, and I voluntarily obligate to abide the law of the State for securing payment for fertilizers and supplies furnished, and to carry out in good faith every part of this agreement.      (Signed)      RICHARD B. LINGO."

It was shown that Boit & Co. were the successors of Boit .& McKenzie, and that the appellant was the assignee of the latter firm. It was shown that the firm of Boit & McKenzie had agents near the residence of defendant; that he ap-

[Claghorn, Assignee, v. Lingo.]

plied to them for "Sea Fowl Guano;" that a commodity purporting to be "Sea Fowl Guano" was delivered by them to defendant, and that he had not paid the money or delivered the cotton according to the agreement. It was also shown that Boit & McKenzie furnished these agents with pamphlets containing certificates recommending "Sea Fowl Guano" as a good, first-class fertilizer, and as up to the standard, which pamphlets were distributed by these agents to the farmers. These agents kept at their place of business a picture in a glass frame, with the "Sea Islands" or banks of Guano, sea fowls, and ships taking the guano, and large letters on the picture "B. D." Below the picture were the words "For sale by Gordon & Stokes, agents." On the upper part of the picture, in letters, were "Sea Fowl Guano." It was shown that these agents gave defendant no express warranty except such as was contained in the pamphlets and advertisement. The testimony of one Boit showed that the fertilizer was manufactured by one Bradley, who lived at or near Boston, Mass.; that Boit & McKenzie purchased of him in large quantities, and had it shipped by vessels to Savannah, Ga., where it was kept stored, and shipped as required, to persons in the interior; that it was the habit of the firm to have all their guano inspected on its arrival in Savannah, Ga., by Dr. A. Means, who was the regularly appointed inspector of the State of Georgia. This witness further testified that all the guano shipped by them to Savannah was a good, first-class article. Dr. Means, the inspector, testified that he inspected several cargoes of guano for Messrs. Boit & McKenzie, which he found to be a good fertilizer, and which was branded as being inspected by him. The defendant, as a witness for himself, testified that he obtained from the local agents of Boit & McKenzie a pamphlet concerning "Sea Fowl Guano," in which it was strongly represented to be a first-class fertilizer, and that it would greatly increase the crops to which it was applied; that the agent represented it to be a first-class fertilizer; that he saw the glass sign with "B. D." on it, and that he was induced by these representations to buy. Witness then offered to state how he had used the guano sent him. The plaintiff objected to this, but the court overruled the objection and allowed the witness to state the mode of application, and the effects produced by the guano, and the plaintiff excepted. This guano, witness further testified had no inspector's brand on the sacks. One Weems, a witness for defendant, also testified that he had examined the crop of defendant, and could see no difference where the guano had been applied.

Upon this evidence, the plaintiff requested the court to

charge the jury : "1st. Plaintiff asks the court to charge the jury that the law of Alabama is that the purchaser must buy on his own responsibility or ask for a warranty. 5th. That posters, circulars or pamphlets, with certificates attached, are not evidence of a warranty of the guano with which to charge plaintiff, unless they believe from the evidence that in said posters or pamphlets plaintiff expressly warranted the guano to produce beneficial results." These charges the court refused to give, and plaintiff excepted. The court, at the written request of the defendant, gave the following charges : "1st. If the jury believe from the evidence that there was a warranty that the guano was a first-class fertilizer, and the jury also believe from the evidence that the defendant properly applied and used the guano and the same was worthless, then they should find for the defendant. 2d. That if neither Dr. Means nor any other witness has sworn that he inspected the particular lot of guano sold and delivered to this defendant, and the defendant has testified that when he received the bags of guano there was no marks, brands or tags on the bags except the words " Sea Fowl Guano," then the jury are not authorized to find that the guano delivered to the defendant was ever inspected by any one after it left the place of its manufacture in or near Boston. 3d. That if the jury believe from the evidence that the original plaintiffs, by themselves or agents, represented to the defendant the fertilizer for which the note was given, to be " Sea Fowl Guano," or " B. D.," illustrated by pictures, and that the defendant was thereby induced to buy it, and they further believe that the article he received was of no value, then they must find for the defendant. 4th. That if the plaintiff undertook to sell the defendant " Sea Fowl Guano," and the article or stuff delivered to them was not " Sea Fowl Guano," but was some thing else, they must find for defendant."

To the giving of each of these charges the plaintiff separately excepted. The admission of the evidence objected to, the charges given, and the refusal to charge as requested, are now assigned as error.

J. A. CLENDENIN, for appellant.

W. C. OATES, contra.

MANNING, J.—We do not think there was any error in permitting testimony on behalf of defendant of the manner and effect of his using in the cultivation of his crops the article in controversy, represented to be sea fowl guano. This

[Grant v. The State.]

testimony seemed relevant to the inquiry whether or not the commodity sold to him was the article he had ordered or a different one.

The first charge asked on behalf of plaintiff and refused by the court, was written in terms which might have misled the jury. In view of the character of the controversy, they might have supposed that if defendant did not "*ask* for a warranty," he could not avail himself of a warranty voluntarily given by the person he contracted with, or arising out of the circumstances attending the transaction. It was not error, therefore, to refuse it as written. The rule in this respect is thus set forth in other cases: "To entitle the purchaser to recover for any defect in the quality or soundness of the article or property sold, except under special circumstances, he must prove that the seller warranted the thing sold to be good and sound, or that he concealed or fraudulently misrepresented its qualities." "A bare representation or assertion as to the quality of the property, *if so intended and understood*, by the parties, will amount to a warranty."—*Barnett v. Stanton*, 2 Ala. 184.

There was no error in refusing the charge numbered 5th, asked by plaintiff. It commits it to a jury to determine whether the written or printed articles referred to "warranted the guano to produce beneficial results." To construe such articles is within the province of the judge.

The suit being upon a written contract for the delivery by defendant of a specific quantity of cotton, or a particular sum of money, for the article sold as sea fowl guano, without any common count, there was no error in the charges given by the court and excepted to by plaintiff.

Let the judgment of the Circuit Court be affirmed.