# Pacific Guano Company *v.* Mullen.

### *Action on Promissory Note, by Assignee against Maker.*

1. *Inspection of imported fertilizers ; contract in violation of statute requiring.* In an action on a promissory note, by assignee against maker, a special plea averring that the consideration of the note "was for fertilizers which were sold and delivered to him before the 14th December, 1874, in the State of Alabama, the packages of which were not stamped or branded according to the requirements of an act approved March 8th, 1871, entitled 'An act to protect the planters of this State from imposition in the sale of fertilizers;' and that said packages had not on them the name of any person as inspector, nor the name of any county in which the same was inspected *nor* certified at the time of the sale, nor was *it* in any way stamped, branded or certified, as required by said act,"—presents a good defense to the action.

2. *Certified copy of charter of foreign corporation.*—A copy of the "act to incorporate the Pacific Guano Company," as enacted by the legislature of Massachusetts on the 3d April, 1867, held to have been properly received in evidence, on a certificate in these words : " A true copy : witness the seal of the Commonwealth of Massachusetts ;" signed "*Henry B. Price,* secretary of the Commonwealth," with the seal affixed.

3. *Sale of article by manufacturer ; implied warranty.*—When a person manufactures and sells an article or commodity for a special purpose, he must be held to stipulate that it is useful and adapted for that purpose; and if it is in fact not adapted to that purpose, but is worthless, the purchaser may refuse to pay for it.

4. *Restoration, as condition of rescission.*—Ordinarily, when the purchaser claims a rescission of the contract, he is required to put the seller *in statu quo ;* but, when the use of the article in testing its qualities destroys it, or renders it impossible to restore it to the seller, the case is taken out of the general rule.

5. *Inspection of imported fertilizers; recovery on note, or on common count.*—A recovery can not be had on a note, when part of the consideration was the price of guano imported and sold in this State, while the law was of force requiring fertilizers to be inspected, without a compliance with the requisitions of that law as to inspection, branding, &c., but, if any part of the guano was sold after the repeal of that law, a recovery may be had, *pro tanto,* under the common counts.

6. *Evidence proving failure of consideration.*—In an action on a promissory note, given for the price of "soluble pacific guano" manufactured and sold by plaintiff to defendant, the defendant may prove that he made skillful application of the guano, and found it worthless.

APPEAL from the Circuit Court of Lee.
Tried before the Hon. JAMES E. COBB.

This action was brought by the "Pacific Guano Company," a corporation chartered by the Commonwealth of Massachusetts, against James M. Mullen ; was commenced on the 15th April, 1876 ; and was founded on the defendant's promissory note for $363, dated the 17th April, 1875, and payable

on the 1st November, 1875, to W. H. Young, of which the plaintiff claimed to be the owner and holder.    The pleadings, as set out in the transcript, are somewhat confused.    On the 3d November, 1876, the defendant filed four pleas, the first of which was *nul tiel corporation* (which was afterwards withdrawn), and the others as follows : 2. "That the consideration for which said note was given was for fertilizers, which were sold and delivered to him before the 14th day of December, 1874, in the State of Alabama, the packages of which were not stamped or branded according to the requirements of the act approved March 8th, 1871, entitled 'An act to protect the planters of this State from imposition in the sale of fertilizers.' "    3. "That the contract in which this note was given was, that said Pacific Guano Company should sell and deliver to this defendant five tons of a well-known article of merchandise, called 'Pacific Guano', for which this defendant should execute his said note ; that said plaintiff, in violation of said agreement, delivered to this defendant a quantity of worthless dirt.    And *plaintiff* (?) avers that he had no opportunity of examining the same ; and he further avers that said plaintiff fraudulently concealed the fact that the same was not 'Pacific Guano,' and falsely represented to him that it was 'Pacific Guano'."    4. "That the consideration for which said note was given to W. H. Young was 'Pacific Guano,' an article of merchandise well known to have excellent properties as a fertilizer ; that said Young, instead of delivering to him the said 'Pacific Guano', as he had agreed to do, delivered to this defendant a quantity of worthless dirt ; that this defendant had no opportunity of examining the same ; and the said Young falsely and fraudulently represented to this defendant that the same was 'Pacific Guano.'    And defendant avers that said note was transferred to plaintiff after the same had become due, and that said plaintiff paid no valuable consideration therefor."

On the 5th May, 1879, the defendant filed, by leave of the court, "this additional plea : He says that the original trade, in which the note sued on was given, was made in October, 1874, whereby said plaintiff, which is a company engaged in manufacturing and selling fertilizers, agreed to deliver presently two tons of guano, generally known as 'Soluble Pacific Guano', for the purpose of being used by defendant on his farm as a fertilizer : that said plaintiff did then and there deliver two tons of what it asserted to be 'Soluble Pacific Guano,' but which defendant alleges was but worthless dirt, but which was delivered to him some time in October, or November, 1874 ; and defendant alleges that plaintiff agreed to deliver on a subsequent day the balance of said guano

[Pacific Guano Company v. Mullen.]

which this defendant had agreed to purchase ; and that said defendant, relying on the said promise of said plaintiff, afterwards received from said plaintiff a certain lot of what said plaintiff alleged·to be 'Soluble Pacific Guano,' but which was·nothing but worthless dust, but which plaintiff alleged had been manufactured by it; and defendant further alleges that he was not aware of the pretended guano not being guano, and that none of said lots of pretended guano was stamped or branded according to the requirements of the said act approved March 8th, 1871, entitled 'An act to protect the planters of this State from imposition in the sale of fertilizers'."

On the 3d November, 1879, another plea was filed by the defendant, in these words : " For further plea, defendant pleads an off-set : he says that the article for which said note was given was known as 'Pacific Guano,' an article manufactured by plaintiff as a fertilizer in raising crops ; that said guano was furnished to defendant by plaintiff, under the agreement that the same was a good fertilizer, and suitable to improve the yield of corn and cotton ; that defendant made said application of said guano to his corn and cotton, but the same was, in the knowledge of plaintiff, perfectly worthless, and did not improve the yield of corn and cotton, and thereby damaged defendant in the said sum of $500."

On the 16th February, 1880, a regular day of the February term of the court, the plaintiff amended its complaint, by leave of the court, by adding a count in these words : " Plaintiff further claims of defendant $300, the value of a fertilizer, known as 'Pacific Guano,' sold by plaintiff to defendant during the year 1875." On the same day, as the next minute-entry recites, " defendant, by leave of the court, amends his plea No. 1, filed May 5th, 1879, by alleging that thereby said plaintiff warranted said·fertilizer to be merchantable, and well adapted for the use for which it was manufactured, but that the said warranty was broken in this : that said fertilizer was worthless dirt as aforesaid, and not merchantable fertilizer well adapted for. said use."

On the same day, February 16, 1880, demurrers were filed to the pleas, as follows : " For answer to the pleas filed November 3d, 1879, plaintiff says : 2. *To second plea* plaintiff demurs, and for grounds of demurrer says—1st, the act referred to is too uncertain to be enforced ; 2d, it is not shown by said plea that the fertilizer sold was a manufactured fertilizer, or that it was imported into this State ; 3d, that said plea is too uncertain and indefinite. 3. Plaintiff demurs *to the 3d plea,* and for grounds of demurrer says—1st, that the facts disclosed show no defense against this plaintiff, be-

cause there is no offer to return said fertilizer to said plaintiff alleged in said plea ; 2d, that the facts disclosed show no defense to said note in the hands of this plaintiff. 4. *To the 4th plea* plaintiff demurs, and for ground of demurrer says—1st, it does not appear from said plea that there was any warranty of the fertilizer sold by said W. H. Young; 2d, that said plea does not show any return, or offer to return said fertilizer ; 3d, that said plea is double ; 4th, that said plea is not sworn to. And for answer to the plea filed May 5th, 1879, plaintiff says—1st, that said plea is double ; 2d, that the plea presents no single issue. And for answer to the plea filed November 5th, 1879, plaintiff demurs, and says for grounds of demurrer—1st, that the matters therein stated can not be pleaded by way of set-off ; 2d, that the matters therein stated should be pleaded in bar, and not by way of set-off."

On the same day, by leave of the court, the defendant amended "his 2d plea filed November 3d, 1876," and filed an additional plea, marked No. 7. The amendment to the 2d plea seems to have been allowed after demurrer sustained to the original, and alleged " that said fertilizer was a fertilizer imported into this State, and that the packages thereof had not on them the name of any person as inspector, nor the name of any county in which the same was inspected, nor certified, at the time of said sale ; nor was it in any manner stamped, branded or certified, as required by said act. And he amends his plea filed May 5th, 1879, by striking out the portion thereof which alleges that said guano was not stamped or branded according to the requirements of the act approved March 8th, 1871, entitled 'An act to protect the planters of this State from imposition in the sale of fertilizers'."

*Plea No.* 7 was in these words : " For further answer to said complaint, defendant says, that the consideration for which said note was given was five tons of fertilizer imported into this State in 1874, two tons whereof had been sold and delivered by plaintiff to defendant, in Lee county, Alabama, in October, 1874 ; which said fertilizers were imported into this State, but, at the time of the said sale and delivery, the same were neither inspected, stamped, nor certified as required by an act of the General Assembly of Alabama, approved March 8th, 1871, entitled," &c.

Another demurrer was interposed by plaintiff, filed on the same day, as follows : Plaintiff demurs to *plea No. 1,* of those filed November 3d, 1876, as amended, and assigns the same grounds of demurrer as before the amendment. And for answer to the plea filed May 5th, 1879, as amended, plaintiff

demurs, and says—1st, that said plea shows that the defend-
ant received the guano, but made no offer to return it ; 2d,
said plea is double, in that it alleges two distinct contracts
of purchase, and two breaches thereof ; 3d, said plea is too in-
definite and vague to present an issue. And for answer to
*plea No.* 7, plaintiff demurs, and says—1st, said plea does
not go to the entire cause of action declared on, to-wit, a
promissory note ; 2d, said plea proposes to be a defense to
the entire note, whereas it only applies to a part of the con-
sideration of said note ; 3d, the fact that two tons of guano
were not inspected, as mentioned in said plea, does not in-
validate the entire note ; 4th, said inspection law is void for
uncertainty in its provisions."

The rulings of the court on these several demurrers are
thus stated in the judgment-entry : "Came the parties," &c.,
and the defendant withdraws the plea of *nul tiel corporation ;*
and the plaintiff demurred to the remaining pleas on file, as
shown by the demurrers on file ; which demurrers being con-
sidered by the court, the same is sustained as to plea No. 2,
of the pleas filed November 3d, 1876. And the defendant,
by leave of the court, amended the said plea, as shown by
the amendment on file ; and the plaintiff renewed the grounds
of demurrer to the said plea as amended ; which demurrer,
being considered by the court, is overruled ; and the plaintiff
excepted, and took issue on said plea. And the court over-
ruled the plaintiff's demurrers to the others of said pleas filed
on November 3d, 1876, and the plaintiff took issue on said
other pleas. And the plaintiff demurred to the pleas filed
May 5th, 1879, (?) and gave the defendant leave to amend
said pleas ; and the plaintiff demurred to the last of said
pleas as amended ; which demurrer being considered by the
court, the same is overruled ; and plaintiff took issue on said
last plea. And the plaintiff demurred to the plea filed
November 3d, 1879 ; which demurrer, being considered by
the court, is sustained. And the plaintiff, by leave of the
court, amended the complaint, by adding the common counts;
and the defendant took issue on said common counts, and
pleaded thereto the statute of limitations of three years. The
defendant, by leave of the court, filed an additional plea, No.
7, to which plea the plaintiff demurred ; which demurrer,
being considered by the court, is overruled ; and the plaintiff
took issue on said plea. Thereupon, came a jury,". &c.

"On the trial," as the bill of exceptions states, "the plaintiff
read in evidence, without objection, the note sued on, and
rested his case. There was evidence, on the part of the
defendant, showing that the consideration of said note was
forty-five sacks of guano, purchased by defendant from

plaintiff's agents in said county of Lee, fifteen of which were purchased prior to the 14th day of December, 1874, and had not been inspected, stamped or branded, or certified to by any inspector, or sub-inspector of fertilizers, under and by virtue of the said act approved March 8th, 1871, entitled 'An act to protect the planters of this State from imposition in the sale of fertilizers.' The remainder of said forty-five sacks was purchased in the spring of 1875; and upon said last purchase, the defendant executed the note now sued on, for the whole lot of forty-five sacks. There was no evidence showing, or tending to show, that the plaintiff or its agents expressly warranted said fertilizer, or made any representations in reference thereto; but there was evidence showing that the plaintiff's agent, who sold the fertilizer to the defendant, knew he was a farmer, and was buying it for the purpose of using on his crops. For the purpose of showing that the plaintiff was a manufacturer of fertilizers, the defendant offered in evidence a paper under the seal of the State of Massachusetts, purporting to be the plaintiff's charter." This act, as shown by said copy, was entitled "An act to incorporate the Pacific Guano Company," and was approved the 3d April, 1867; and to it was appended a certificate in these words: "Boston, April 20th, 1876. A true copy : Witness the seal of the Commonwealth of Massachusetts," which was signed, "*Henry B. Price*, secretary of the Commonwealth," with the great seal annexed. "The plaintiff objected to the introduction of said alleged charter as evidence, on the following grounds : 1st, that it was irrelevant; 2d, that there was nothing to show it was a law in force ; 3d, that it was not so certified or authenticated as to authorize its admission in evidence. The court overruled said objections, and permitted said charter to be read as evidence to the jury; to which said several rulings the plaintiff separately excepted. There was no evidence, other than said charter, that plaintiff was a manufacturer of fertilizers, or that it manufactured the fertilizers for the price of which this suit was brought.

"The defendant was permitted, against the objection of the defendant, to introduce testimony tending to show that he made skillful application of said fertilizer to his crops of corn and cotton, and that said fertilizer was of no benefit to said crops. The plaintiff's objections to said evidence were, 1st, that there was no evidence tending to show any express warranty, or any representations on the part of the plaintiff or its agents, in respect to said fertilizer; 2d, that there was no competent evidence that the plaintiff manufactured said fertilizer, or was a manufacturer of fertilizers. The court

overruled each of said objections, and admitted the evidence; to each of which rulings plaintiff excepted.

"The court charged the jury, in its general charge, among other things, that if the plaintiff was a manufacturer of fertilizers to be used for the purpose of fertilizing crops, and manufactured and sold the fertilizer to the defendant for which the note was given, with the knowledge that the defendant bought it for the purpose of fertilizing crops; then there was an implied warranty on the part of the plaintiff that the fertilizer was reasonably well suited in quality for the purpose for which it was sold; and if it was worthless, then the plaintiff could not recover. And the court further charged the jury, as a part of its general charge, that if the consideration of the note sued on was forty-five sacks of fertilizers, and fifteen of said sacks were sold by plaintiff to defendant prior to the 14th December, 1874, and were not inspected, branded or analyzed, or certified to by any inspector or sub-inspector of fertilizers, appointed under and by virtue of said act of the General Assembly approved March 2d, 1871, to protect planters against imposition in the sale of fertilizers; then the plaintiff could not recover any thing on the note, even if the remaining sacks were sold after the repeal of said law, and though said note was executed after the repeal of said law."

The plaintiff excepted to each part of this charge, and now assigns it as error, together with the adverse rulings of the court on the pleadings and evidence, as above stated.

JNO. M. CHILTON, for appellant.—The general rule is, that there is no implied warranty of quality or soundness, in the sale of chattels.—*Ricks v. Dillahunty*, 8 Porter, 133; *Preston v. Dunham*, 52 Ala. 217; 9 Porter, 104; 2 Ala. 181. The exception to this rule, as to sales by manufacturers, can not apply to this case; because there was no proof that the plaintiff was a manufacturer, except the copy of the charter, which was improperly admitted in evidence, because it was not certified in legal form, and was not admissible for the particular purpose for which it was offered and received.— 1 Greenl. Ev. § 491; *Wilson v. Walker*, 3 Stew. 318. Again, the doctrine of an implied warranty, in sales by manufacturers, only applies where the sale is for some special or particular purpose, and where the purchaser does not rely on his own judgment.—Benjamin on Sales, 488, ed. 1868; *Chanter v. Hopkins*, 4 M. & W. 399. A fertilizer may be beneficial to some kinds of crops, while ruinous to others; and it may be suitable for one kind of soil, while worthless in another. The purchaser may wish to experiment with different fertil-

izers, for the purpose of ascertaining the particular kind best suited to his land ; but he must do so at his own expense, or require from the seller an express warranty, or a particular representation on which he relied. In both of these points, the charge of the court is erroneous. As to the latter part of the charge, it is insisted the court also erred, and that a partial recovery might be had for the price of the guano sold after the repeal of the inspection law of 1871.—*Charleton v. Woods,* 29 N. H. 290 ; *Robinson v. Green,* 3 Metc. 159.

H. C. LINDSEY, *contra,* cited *Woods v. Armstrong,* 54 Ala. 150 ; *Pacific Guano Co. v. Dawkins,* 57 Ala. 115 ; *Poulton v. Lattimore,* 9 B. & C. 259 ; Benjamin on Sales, 684 ; Chitty on Contracts, 582 ; *United States v. Amedy,* 11 Wheaton, 392.

STONE, J.—The second plea of defendant, as amended, presented a good defense to the action, and the Circuit Court did not err in overruling the demurrer to it.— *Woods v. Armstrong,* 54 Ala. 150 ; *Pacific Guano Co. v. Dawkins,* 57 Ala. 115.

Neither did the Circuit Court err in receiving in evidence the act of the legislature of Massachusetts, incorporating the "Pacific Guano Company," exemplified as it was under the great seal of that State.—1 Greenl. Ev. § 489. One of the purposes of that corporation, as expressed in the charter, was the manufacture of fertilizers. It is common knowledge, that guano, in its varied manipulated forms, is a fertilizer. The present suit was brought in the name of the Pacific Guano Company, and there was evidence that "pacific guano" was the consideration of the note sued on. We think these facts amounted to sufficient evidence to justify the court in submitting to the jury the inquiry, whether the fertilizer named was the consideration of the note, and whether it was manufactured and sold by plaintiff as a fertilizer.

A manufacturer of articles, for a special purpose, is, when the article is sold for such purpose, to be held to have stipulated that it is useful, and adapted to that purpose. If the article so manufactured and sold is worthless, then the vendor-manufacturer has broken his contract, and the purchaser may renounce the contract, and refuse to receive the article ; or, if he has received it, and afterwards learned its worthlessness, may refuse to pay for it.—Benjamin on Sales, edition by Perkins, §§ 661, *et seq.* ; *Herring v. Skaggs,* 62 Ala. 180.

The fact that the trial, which tested the quality of the fertilizer, rendered it impossible to restore it to the seller, takes this case out of the rule, which, ordinarily, requires of a pur-

chaser, claiming a rescission, that he put the vendor in *statu quo.* The court did not err in giving the first part of the general charge excepted to.

Neither did the Circuit Court err in the second charge given. If part of the consideration of the note was "pacific guano," imported and sold without inspection, while our inspection statute was in force, then there could be no recovery on the note.—Addison on Contracts, Morgan's Ed., vol. 1, § 300, note K; *Bozeman v. Allen,* 48 Ala. 512; *Rand v. Mather,* 11 Cush. 1; 1 Brick. Dig. 382, § 116. There could be a recovery on the common count, for that part of the guano which was sold after the repeal of the inspection statute, provided there was no other valid defense. This the charge did not deny.

The evidence that defendant had made skillful application of the fertilizer, and found it worthless, was clearly admissible.—*Young v. O'Neal,* 57 Ala. 566; *Claghorn v. Lingo,* 62 Ala. 230.

Affirmed.