# Doe *ex dem.* Hooper *v.* Clayton *et al.*

## *Ejectment for Lands sold for Taxes.*

1. *Tax-deed as color of title.*—A tax-deed, though invalid as a muniment of title, may give color of title, and operate to fix and define the boundaries of an actual possession

2. *Proof of ownership and possession of land.*—Ownership and possession of lands can not be proved by general notoriety, nor by reputation.

3. *Declarations as to title, by person in possession of land.*—The declaration of a person who is in possession of land, exercising acts of ownership over it, "that he bought said land at tax-sale," is not competent or admissible as evidence.

4. *Interrupting continuity of possession.*—When a person is in possession of lands by his tenants, under a purchase at a tax-sale, the continuity of possession is not broken by the former owner going upon the land several times, claiming it, and endeavoring to induce the tenants to acknowledge him as their landlord.

5. *Adverse possession by purchaser at tax-sale, as against owner.*—When lands sold for taxes are at the time occupied by tenants, whom the purchaser induces to attorn to him, without first dissolving their legal relation to the owner, this, without more, would not create an adverse possession by the purchaser as against the owner; but, if the owner was notified of such renunciation and change of tenancy, or if it was so open and notorious as to amount to constructive notice, the possession might then become adverse.

6. *Description of land in conveyance.*—Where lands sold for taxes are described in the certificate to the purchaser, or in the deed of the judge of probate, as "270 acres in the N. E. corner" of the section, there is no uncertainty or indefiniteness in the description, but the lands are presumed to lie in the form of a square of four equal sides.

7. *Discrepancy between deed to purchaser and official docket of probate judge, as to quantity of land sold.*—Where the deed to the purchaser of lands sold for taxes, and the official record of the sales kept by the judge of probate, differ from each other as to the quantity sold, the discrepancy does not present any issue for the decision of the jury, but is a legal question; and the deed must control, when offered, not as a muniment of title, but as color of title fixing the boundaries of an adverse possession.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. H. D. CLAYTON.

This was ejectment by the appellant, Charles M. Hooper, against the appellees, Melissa J. Clayton, widow of A. R. Lyon, deceased, and others, tenants in possession, for the recovery of section 12, township 17, range 28, located in Lee county, Alabama. The suit was commenced March 17, 1879.

The defendants pleaded the general issue, and, among

other special pleas, the statute of limitations of five years, relating to suits for the recovery of lands sold for taxes.

The evidence on the part of plaintiff tended to show, that in 1858 or 1859, George D. Hooper was the agent of one Columbus Mills, for the purpose of looking after the lands of said Mills, and the section of land in controversy was called to the attention of Hooper by its being known as the "Mills Tract;" that in one of said years Hooper, with some hands, went upon said lands and blazed trees and made a defined path around said section on the lines thereof; that Hooper at that time had no written evidence of his agency, but in 1862, he received from said Mills a written power of attorney, which, among other things, authorized Hooper to occupy, rent or sell all of the lands of said Mills. This power of attorney bore date May 30, 1862, and was duly proved and admitted in evidence. The evidence further tended to show, that from the time Hooper went upon said land as above stated to 1870, it was all in forest, uninclosed and unimproved, but said Hooper, as agent of said Mills, went repeatedly on said land, before, during and after the war, and that, during said time down to 1868, he claimed the land as the agent of said Mills, and notified the neighbors of said claim.

There was evidence tending to show, that plaintiff had frequently, after 1865, been on said land, and at request of of Geo. D. Hooper as agent of Mills, had tried to sell it. The plaintiff being introduced as a witness, was asked, whether from the time of G. D. Hooper's entry upon the land in 1858 or 1859 as above stated and prior to 1869, "it was or was not well and notoriously known in the neighborhood that G. D. Hooper was in possession of the land." The defendants objected to this question as irrelevant and incompetent, the court sustained the objection and plaintiff excepted.

The plaintiff was then asked, whether during that period of time, "the possession of G. D. Hooper as agent of Mills, was or was not open and notorious." The defendants objected to this question on the same grounds; the court sustained the objection and the plaintiff excepted.

The evidence tended to show, that in 1868 or 1869, Geo. D. Hooper, as agent of Mills, executed and delivered to the plaintiff a paper writing, which had been destroyed by fire, the contents of which were as follows:

"I, Geo. D. Hooper, agent of Dr. Columbus Mills, agree to sell Charles M. Hooper section 12, township 17, range 28, for $300.00, subject, however, to the approval of Dr. Mills. Should Dr. Mills disapprove of this contract, said C. M.

Hooper shall be paid for services in procuring tenants and improving place." (Signed) "Columbus Mills, by G. D. Hooper, his agent." After the execution and delivery to to him of this contract, the evidence tended to show, that the plaintiff took possession of the land in 1870, claiming under said contract, by putting tenants thereon, who made improvements on different parts thereof, and these tenants remained on the land, holding under plaintiff, till the fall of 1872.

The defendants then offered in evidence a tax deed in regular form, made by the Probate Judge of Lee county, to one A. R. Lyon, embracing the land in controversy, and other lands, dated April 4, 1872, and duly acknowledged and recorded on that day. Said deed recited the sale of said section of land on March 9, 1870, for taxes thereon for the year 1869, and the purchase thereof at said sale by said A. R. Lyon, and that the sale was begun and held on said 9th day of March, 1870. The defendants, in offering said deed, stated, that they did not offer it as evidence of a legal title in said Lyon, but only under their plea of the statute of limitations of five years and to show color of title in said Lyon, and they offered in connection with said deed, proof that defendant, Melissa J. Clayton, formerly widow of said Lyon, and her co-defendants, claimed to hold the land sued for under and through said Lyon.

The plaintiff objected to the introduction of the deed in evidence on the grounds, substantially, that a compliance with all the requirements of the statutes, regulating the levy, assessment and collection of taxes on said land for said year 1869, and sale of said land therefor, had not been shown, and, also, upon the ground that the deed showed on its face that the sale was begun March 9, 1870, when the law required it to be commenced the first Monday in the month, which was March 7th. The court overruled the objection and admitted the deed in evidence, and the plaintiff excepted.

The defendants, also, offered in evidence, the tax collector's certificate of the purchase of said section of land at said sale by said A. R. Lyon, dated March 9, 1870, the day of the sale.

The tax collector was introduced as a witness for the defendants, and testified, that he made the sale of said land March 9, 1870, and executed and delivered said certificate to Lyon on the day it bore date, and that he commenced his sales of lands March 7th, being the first Monday in the month. The defendants, also, introduced the tax books from the year 1870 to 1876, both inclusive, showing that for

each year during that time the lands had been assessed to Lyon, and, in connection therewith, the tax receipts of the tax collector, showing payment of said taxes by said Lyon during said time.

The plaintiff objected to each portion of the foregoing testimony, as it was offered, from the certificate of purchase to the tax receipts, on the ground, that it was irrelevant and incompetent, and on other grounds, but the court overruled each objection, and the plaintiff excepted separately to the admission of each portion thereof.

There was evidence tending to show, that Lyon took possession of the land in 1870, after his purchase at tax sale and made improvements and placed tenants thereon, and remained so in possession, claiming it as his till he got his tax deed, and after that held under his tax deed; and there was, also, evidence tending to show, that he took possession in the fall of 1872, by contracting with the persons whom plaintiff had placed in possession in 1870, and the contract made with said persons was, that Lyon agreed to sell each of them a portion of said land to be paid for in two years, and in default of payment of purchase money, rent was to be paid to said Lyon, and the evidence tended to show, that said persons failed to pay the purchase money and paid rent to Lyon to the time of his death, which occurred in November, 1876. There was evidence that, after the death of Lyon, said tenants remained on the land and paid rent from year to year to defendant, Melissa J. Clayton, who was the administratrix of the estate of said Lyon, and the guardian of their infant daughter, Claudia M. Lyon, to whom they had executed a deed of gift of said land, November 27, 1876; and that, at the commencement of this suit, the co-defendants of said Melissa J. Clayton, and her present husband, J. W. Clayton, were in possession of parts of the land as tenants of said Melissa J. Clayton, and some of said co-defendants were the same who had entered upon said land in 1870 as tenants of the plaintiff, said Charles M. Hooper.

F. C. Slappy, a witness for defendants, testified that he saw Lyon on the land in 1871, and asked him, while both were on the land, if he was selling these lands, and Lyon replied, that the lands were his, that certain tenants near by were his tenants, and that he had bought the lands at tax sale. The plaintiff moved to exclude the declaration of Lyon that the tenants were his tenants, on the ground that the testimony was incompetent, and, also, to exclude the declaration that Lyon had bought the land at tax sale, on the grounds—1. That it was incompetent; and 2. That,

being a declaration as to the source of his claim or right of title, it was inadmissible. The court overruled the objections to both declarations separately, and the plaintiff separately excepted.

One Hays, a witness for the defendants, testified, that he saw Lyon on the land in 1870, and Lyon told witness that he had bought the land, and that witness could not cultivate the next year without paying rent to him for a small strip of the land which witness was then cultivating by mistake.

The court overruled a motion of the plaintiff to exclude these declarations of Lyon on the ground of incompetency, and plaintiff excepted.

There was evidence tending to show, that plaintiff moved to Florida in 1872, leaving on the land the tenants he had placed there in 1870, and among them Jim Palmer, as his agent to procure other tenants and look after the land, and that before leaving, he also requested his brother, George Hooper, to exercise general supervision over the land and tenants ; that he remained in Florida until 1876 and did not hear that Lyon claimed the land and had tenants in possession thereof, until after Lyon's death, but that as soon as he was informed thereof, he returned to Lee county, Alabama, and in the spring of 1877, went upon said land several times and claimed it, and endeavored to get one Henry Lockey, who then was, and had been, a tenant of Lyon on the land for five or six years, to sign a paper, acknowledging that he (Lockey) was holding the land for plaintiff, which Lockey refused to do, saying, he preferred to ride the horse he was on until it threw him. There was also evidence tending to show, that in 1870, plaintiff knew the land had been sold for taxes and offered to redeem them from Lyon.

The plaintiff introduced the following entry in reference to the tax sale on the judge of probate's book of sales of lands for taxes: "Part sold, N. E. corner; acres, 270; date of sale, March 9, 1870; purchaser, A. R. Lyon; amount paid, $64.90." There was evidence tending to show that defendant, Melissa J. Clayton, was occupying a part and claimed all of said section 12 at the time the suit was brought; and at said time, persons other than the defendant were in possession of a part of said section 12, for which defendants did not defend, as shown by their plea, and that such other persons were holding as tenants of Melissa J. Clayton. The bill of exceptions did not set forth all the evidence. The plaintiff asked in writing the following charges, numbered respectively, 12, 13, 14, 15 and 19, each of which the court separately refused, and to the refusal of each plaintiff separately excepted:

"12. If the jury believe from the evidence, that Charles M. Hooper was in possession of the land sued for under an executory contract to buy the same, and that, while so holding, he placed tenants on said lands, and that afterwards, A. R. Lyon contracted with said tenants or those claiming under them, to sell them portions of said land, or that they should hold as his tenants; and if they further believed from the evidence, that such contract between Lyon and said tenants or those claiming under them, was made in the fall of 1872, and if they further believe from the evidence, that in the spring of 1877, said Charles M. Hooper entered upon said lands while said tenants were so holding the same under said Lyon, and that such entry was with the intent, on the part of said Hooper, to regain a seizin of said land, then the defendants can not resist a recovery under their plea of the statute of limitations of five years."

"13. Possession to be adverse against the owner of lands, under the statute of limitations of five years found in section 464 of the Code of 1876, must be continuous for a full period of five years, and if at any time during the period, the true owner re-enter upon the land, with the intent to regain his seizin, then the continuity of possession necessary to perfect a bar under said statute would be broken."

"14. In order to break the continuity of an adverse possession, a casual entry by the true owner is not sufficient, but if the true owner enter upon some part of the land, with the intent of again asserting his dominion over it, then his entry can not be said to be casual."

"15. Where the true owner enters upon land adversely held, for the purpose of breaking the continuity of such adverse holding, and the land at the time of such entry is held by several tenants claiming from a common source, it is not necessary in order that he may regain his seizin, that such tenants acknowledged his title or his right of entry. If, while upon the land so held and during the period necessary to create a bar, the true owner enter upon the land with the intention of regaining his seizin, then seizin of the entire tract follows his title and the continuity of the adverse holding will be broken."

"19. If the jury believe from the evidence, that only 270 acres of the land in controversy was sold by the tax collector, then the defendants can not in any event resist a recovery, except as to the said 270 acres, and if the jury is unable from the evidence to determine the identity of the particular 270 acres sold, then the defendants can not, under the statute of limitations of five years, defeat a recovery as to any part of the lands of which they were possessed at the

commencement of this suit, provided the plaintiff has made out a *prima facie* case."

The defendants requested the following charges, which were given by the court, and to each of which appellant separately excepted :

"1. If Charles M. Hooper went into possession under the paper from George D. Hooper in evidence, and put parties in possession in 1870, and the land in controversy was sold on March 9, 1870, for its taxes, assessed for the year 1869, and bid in by A. R. Lyon, and said A. R. Lyon got a certificate of purchase from the tax collector, and under that sale a deed was made in April, 1872, by the judge of probate for said land to said A. R. Lyon, and said Lyon took possession of the land under said purchase, either in the fall of 1872, or before that date, and held the possession of the same, either by himself or tenants, until his death in November, 1876, and the defendant, Melissa J. Clayton, who was his widow and the administratrix on his estate, took possession after his death as succeeding to the same, either as his administratrix or for her daughter, who was a minor and the daughter of said A. R. Lyon, and held the same until the first of the year 1878, or the end of the year 1877, then the plaintiff can not recover, and the jury should find for the defendants."

"2. If the jury believe, from the evidence, that the land in controversy was sold for taxes March 9, 1870, and A. R. Lyon became the purchaser, and, at the end of two years from said sale, obtained a deed from the judge of probate, and has held the possession of said land under said deed or sale, he and the present defendants claiming under him, for more than five years from the date of said deed, before and to the commencement of this suit, then the plaintiff can not recover."

"3. Under the evidence in this case, the plaintiff can not have a recovery in any event, and the verdict should be for the defendants for the lands mentioned in the plea of the defendants as being in the possession of other parties not sued, to-wit (describing said lands);" "and for these lands the jury should find for the defendants."

"7. The evidence of George D. Hooper, that, in 1859, he went upon the lines of said land, to-wit: Sec. 12, T. 17, R. 28, and blazed around the lines and marked them out, and did nothing more, does not show any such possession as can ripen into title, or on which an action of ejectment can be maintained."

"9. The jury can not conclude that A. R. Lyon procured

[Doe *ex dem.* Hooper v. Clayton *et al.*]

a deed for more than was sold, by fraud, or otherwise, without proof."

"10.  The sale of land for taxes is the deed of the judge of probate, made to the purchaser, and not the bidding off the land nor the tax collector's certificate of purchase, but the date of sale and the sale in legal contemplation is the deed only, and that determines the land sold under the plea of five years possession."

"11.  The jury can only, in this case, under the plea of five years possession, look to the deed put in evidence to determine what land was sold."

"12.  The certificate of the tax collector, put in evidence, is evidence of the amount of land sold, together with the tax deed."

"13.  While a plaintiff in ejectment may recover, upon proof of possession merely, against an intruder or trespasser, or one who does not show a better right, yet the law presumes, in the absence of evidence to the contrary, that possession is rightful and in subordination to the true title, and the burden of proving it to be adverse, as against the owner of the legal title, is on the party asserting it."

"14.  The law presumes possession to be rightful, and in subordination to the true title, in the absence of evidence to the contrary, and the plaintiff in this action must recover on the strength of his title, and not simply on the weakness of that of the defendants; the plaintiff must show a better right to the land sued for than that held by defendants before they can recover."

"15.  To enable plaintiff to recover by prior possession, without color of title, he must show actual possession, and can only recover for so much of the land sued for as he has shown by proper and sufficient description he thus had actual possession of."

"16.  Even should the plaintiff show he had such prior possession of a part of the land sued for as would entitle him to recover the same, and not the whole tract, yet, before they can do this, they must show, by evidence, such a description of said portion which they may be entitled to, that the jury can find therefrom such a description of the same as would enable the sheriff, upon reading it, to find and locate said portion."

"17.  If Lyon went into possession of the land under a tax deed, for the whole of section 12, and he and those holding under him, held adversely for five years before the commencement of this suit, this will be a bar to the action, notwithstanding the fact, if it be a fact, that the probate judge

made an entry in his book of sales that only a portion of said section was sold."

"18.  When the purchaser of land, sold for taxes, has continued in open and continuous possession thereof, claiming title for a period of five years from the execution of the deed by the proper officer, the statute cuts off all inquiry into the regularity of the sale and operates a bar to the action brought for the recovery of the land, whatever may be the recitals of the deed, or however erroneous they may be, or whatever may have been the irregularities attending the sale."

"19.  If the jury believe, from the evidence, that the time when George D. Hooper blazed around the land, if he did so blaze, was about 1859, and that, after so blazing, the only acts of ownership exei cised over the same by the plaintiff, or said George D. Hooper, was to occasionally ride over the land and contract among themselves as to the sale thereof, until about 1870, this would not be sufficient possession to constitute an adverse holding of ten years."

" 20.  The fact, if it be a fact, that Charles M. Hooper had a tenant or tenants on the place, and said tenant or tenants afterwards contracted with Lyon, the latter fact would constitute Lyon's possession, provided the holding under Lyon by said tenants was open and notorious and could or ought to have been known by Hooper had he remained in the State and used ordinary diligence in ascertaining the same."

" 21.  If the jury believe, from the evidence, that Jim Palmer contracted with both Hooper and Lyon, in reference to a portion of the land sued for, at or about the same time, that soon afterwards Hooper moved off and paid no further attention to said lands for five or more years, that Lyon knew nothing of Palmer's contract with Hooper, that Palmer continued on the place under Lyon's contract, and that Lyon was openly and notoriously on the place directing and controlling the same for five years consecutively, having obtained possession thereof under a tax deed, without any collusion with Hooper's tenants, if he had any, the mere fact that Palmer may have contracted with Hooper, if unknown to Lyon, would not offset the possession of the latter."

" 22.  The deed of the tax collector to Lyon is the best evidence of the amount of land sold for taxes, and, if there be a conflict on this point, the jury will be authorized to find the amount and description of the land sold from the recitals of said deed."

J. M. CHILTON, for appellant.—1. The court erred in admit-

ting the declaration of Lyon, deposed to by witness Slappey, that he, Lyon, claimed the land under a tax title. Declarations as to the source of title, being "merely narrative of past transactions," are not admissible on the principle of *res gestœ.*—*Dothard v. Denson,* 1 Brick. Dig. p. 843, § 560. The declarations testified to by witness Hays, were for the same reason inadmissible. 2. The certificate of purchase was inadmissible under the plea of the statute of limitations of five years, because the statute begins to run from the date of the deed and not of the sale ; and the deed was inadmissible, because it showed on its face, that the sale was commenced March 9, 1870, when the court will judicially know the law required it to begin March 7, 1870. This made the deed *void on its face.*—1 Brick. Dig. p. 805, § 13 and pp. 865–6, §§ 866, 875, 881, 889 ; *Moore v. Brown,* 11 How. (U. S.) 425 ; *French v. Edwards,* 13 Wall. 511 ; Blackwell on Tax Titles, p. 285 *et seq.;* Cooley's Con. Lim. pp. 74–78 ; *Randle v. Jones,* 68 Ala. 258, 262 ; *Nichols v. McGathery,* 43 Iowa, 190. The case of *Pugh v. Youngblood,* 69 Ala. 296, considered at length and argued to be not irreconcilable with the above authorities.—*Pillow v. Roberts,* 13 How. 472 ; *Lee v. Lassiter,* 68 Ala. 287. 3. The charges asked by the appellant should have been given. 3 Wash. Real Prop. 130, 137 ; and charges 1, 2, 7, 10, 11, 12, 17, 18 and 19, given for appellee, should have been refused. *Jones v. Randle, sup a ; Dothard v. Denson, supra ; Russell v. Erwin's Adm'r,* 38 Ala. 44 ; 1 Wash. Real Prop. 559 *et seq.*

W. H. BARNES, and GEO. P. HARRISON, *contra.*—The deed was properly admitted in evidence for the purpose stated. *Pugh v. Youngblood,* 69 Ala. 296 ; *Stovall v. Fowler,* 72 *ib.* 77 ; *Hooper v. Clayton,* 73 *ib.* 359. As to the other points in the case, the following cases and authorities cited : *McCoy v. Odom,* 20 Ala. 502 ; *Benje v. Creagh's Adm'r,* 21 *ib.* 151 ; *Whitsett, Gamer & Co. v. Slater,* 23 *ib.* 626 ; Wood on Lim. of Ac. p. 574, § 270 ; *Crosby v. Pridgen,* 76 Ala. 385 ; *Bell v. Denson,* 56 *ib.* 444 ; *Doe ex dem. Farmer's heirs v. Eslava,* 11 *ib.* 1028 ; *Henderson v. Griffin,* 3 Pet. U. S. 151 ; *Burrows v. Gallup,* 32 Conn. 493 ; *Wing v. Hall,* 47 Vt. 182 ; *Soule v. Barlow,* 49 Vt. 329 ; *Pray v. Pierce,* 7 Mass. 383 ; *Holley v. Hawley,* 39 Vt. 534 ; *Carroll v. Gillion,* 33 Ga. 539, 548 ; Sedgwick & Wait on Trial of Titles to Land, p. 448, § 717 *et seq.* and p. 195 ; 14 Am. Dec. 580 and note ; *Fowler v. Whiteman,* 2 Ohio St. 270 ; *Drew v. Swift,* 46 N. Y. 204.

STONE, C. J.—The question of gravest importance in this case arises on the admissibility of the tax deed in evi-

[Doe *ex dem.* Hooper v. Clayton *et al.*]

dence.   That deed was put in evidence, not as furnishing in itself, or by its unaided force, a complete title to the premises.   Its purpose was to show color of title, the extent of the possession claimed, and in what right the defendant entered, and claimed the right to enter and hold possession. Under the rulings in *Pugh v. Youngblood,* 69 Ala. 296, and *Stovall v. Fowler,* 72 Ala. 77, we held that the deed was properly admitted, and that, when executed and recorded, it was sufficient color of title to constitute a possession taken and held under it independent and adverse.—*Bolling v. Smith,* 79 Ala. 535 ; *Hughes v. Anderson,* 79 Ala. 209.

Ownership and possession of land are each facts, to be proved by evidence as other facts are proved.   Neither can be proved by general notoriety, nor by reputation.

Defendants were allowed to prove, against the objection and exception of plaintiff, that Lyon, under whom defendants claim, stated in 1871, while on the land, and exercising acts of ownership over it, "that he, Lyon, had bought said lands at tax sale."   This was error.—*Daffron v. Crump,* 69 Ala. 77, which collects the authorities.

The testimony relating to Hooper's visit to the lands after Lyon had asserted possession, and shortly before the suit was brought, taken in its extremest tension, was not such a retaking of possession as could break the continuity of the possession the testimony tends to show the defendants had.—*Pearce v. Clements,* 73 Ala. 256 ; *Clements v. Hays,* 76 Ala. 280 ; *Crosby v. Pridgen, ib.* 385.

Charge No. 12, asked by plaintiff, ignores entirely all testimony introduced tending to show that Lyon took actual, personal possession ; and that he and those claiming in his right had and held a possession beyond and independent of those persons whom, it is contended, he found in possession as tenants under Hooper.   We are not prepared to gainsay the proposition, that, if the sole possession which Lyon, and those claiming in his right, acquired, consisted in his inducing tenants he found in possession under Hooper, to acknowledge him as their landlord, and this, without first dissolving their former relation of landlord and tenant in some legal mode, a possession acquired and held solely in this way, without more, can not become adverse to Hooper. *Farris v. Houston,* 74 Ala. 162 ; *Same v. Same,* 78 Ala. 250. In what we have said, it is not our intention to assert that a possession taken solely by having Hooper's tenants attorn to him, Lyon, and holding under him, could, under no circumstances become Lyon's holding adverse to Hooper.   If Hooper was notified of such renunciation and change of tenancy, or, if it was so open and notorious as to give con-

26

[Doe *ex dem.* Hooper v. Clayton *et al.*]

structive notice of its occurrence, this would furnish a sufficient beginning point for an adverse holding in Lyon. This inquiry the charge ignores.—*Lipscomb v. McClellan*, 72 Ala. 151; *Dothard v. Denson, ib.* 541; *Pillotson v. Kennedy*, 5 Ala. 407. And, as we have said, it also ignores all testimony tending to show Lyon acquired possession personally, or through other persons not so hampered, and was rightly refused on that account.

Charge 13, construed in connection with the testimony, was rightly refused. As we have said above, there is no proof of re-entry by Hooper, sufficient to break the continuity of an adverse holding, if such adverse holding be found to exist.

Charges 14 and 15 fall under the rule declared as to charge 13, and were rightly refused.

Charge 19 puts, as one of its hypotheses, that there may be difficulty and uncertainty in locating 270 acres in the N. E. corner of a section of land—such part being sold for the taxes of the whole section. This is a mistake. Such fraction the law both declares and presumes to be a square of four equal sides, carved out of the North East corner. A surveyor can locate it.—*Wilkinson v. Roper*, 74 Ala. 140. This is itself enough to justify the refusal of the charge. This charge, however, has other defects. One of its clauses asserts that "if the jury believe from the evidence that only 270 acres of the land in controversy was sold by the tax collector of the county in the year 1870, then the defendant can not in any event resist a recovery except as to the said 270 acres." One of the controverted questions in this case was, whether the plaintiff had shown sufficient title or anterior possession to maintain the action, even if defendant had shown no title whatever.—*Hines v. Chancey*, 47 Ala. 637; 3 Brick. Dig. 325, § 38. The charge was correctly refused on this account also.

There is a further difficulty. The tax collector's certificate of purchase given to Lyon, and the deed of the judge of probate afterwards issued to him, each describes the land as the entire section 12—the whole of the lands sued for in this action. The statute under which the lands were sold, approved December 31, 1868, Sess. Acts, 1868, page 329, § 70, required the judge of probate " to attend all sales of real property for taxes made by the collector, and make a record thereof in a book to be kept by him for that purpose, therein describing the several parcels of real property on which the taxes and costs were paid by the purchaser, * * stating in separate columns, * * * how much and what part of each tract was sold, and date of sale." The entry

in relation to this sale, shown in the probate judge's book of sales, is as follows : "Part sold, N. E. corner ; acres, 270 ; date of sale, March 9, 1870 ; purchaser, A. R. Lyon ; amount paid, $64.90." And the tax collector was required to keep a similar book of sales. All these papers or records, except the tax collector's book of sales, were put in evidence in this case. The probate judge's book of sales, his deed to the purchaser, and the tax collector's certificate of purchase given to Lyon, were each and all official acts, and import verity. They differ in that the book of sales shows 270 acres sold, while the other papers show the whole section, or 640 acres sold. Which is right, and how is the issue to be determined ? The evidence being entirely documentary, not to mention the fact that it consists entirely of official acts, it is manifest it did not and cannot present an issue for decision by the jury.—*Bernstein v. Humes,* 60 Ala. 582 ; *Claghorn v. Lingo,* 62 Ala. 230 ; *Jones v. Pullen,* 66 Ala. 306. The court did not err in refusing to give charge 19.

The defendants asked twenty-two separate charges, each of which was given, and there was a separate exception reserved to the giving of each. We consider it unnecessary to notice these separate charges in detail. All of them are free from error, unless there is something in those to be noticed presently. Charges 10, 11, 12, 17 and 22 relate to the same subject, and may be considered together. They raise the inquiry, whether the record of the tax sale kept by the judge of probate, when it differs in the quantity sold from the tax collector's certificate of purchase and from the deed afterwards made to the purchaser, dominates the latter, or is dominated by it.

We need not and will not decide in this case, whether if the tax collector in fact sold only a part of the land, yet title was made to the purchaser for the whole, there is any mode by which the deed can be corrected. That question is not before us. We have to deal with the question as it was presented in the court below. So presented, we feel forced to hold, that under our statutes and the rulings upon them, the language of the deed must determine the question. Acts of Dec. 31, 1868, Sess. Acts 1868, p. 297, §§ 87, 89, 92 ; Code of 1876, §§ 458, 460, 461, 464.—*Jones v. Randle* 68 Ala. 258 ; *Bolling v. Smith,* 79 Ala. 535.

What we have said last above we confine to cases like the present, where the deed is offered, not as a link in a chain of title, sufficient in and of itself, capable of resisting all assaults. We will neither declare nor intimate what would be our ruling, if the defense was rested solely on the suffi-

ciency of title, unaided by the statute of limitations. What we do decide is, that where the deed was offered, as was done in this case, as mere color of title—as evidence of the character in which defendant entered and holds, and of the extent of his asserted possession, then the inquiry behind the deed becomes immaterial.

On the single question noted above,

Reversed and remanded.