[Whaley v. Wilson.]

# Whaley *v.* Wilson.

*Bill in Equity to enjoin the Obstruction of a Public Road.*

1. *Injunction of obstruction of public road; what necessary to maintain bill.*—In order for a citizen to maintain a bill to have removed as a public nuisance a fence constructed across a road, in addition to showing special and particular injury to the complainant, distinct from that suffered by him in common with the general public, it is necessary for him to aver and prove that the obstructed road was a public road.

2. *Public road; establishment by prescription.*—Where the character of a road, whether public or private, depends upon prescription to make it a public road, it must appear that the general public, under a claim of right and not by mere permission of the owner, used the said road without interruption or substantial change for a period of twenty years or more; and if the use of the road by the public is, within the twenty years essential to create prescription, interrupted or broken by an act of the owner of the land over which the road runs, manifesting an intention on his part to exclude the public from the uninterrupted use of the road, and of such a nature as to give the public notice that such was the intention, the right by prescription fails, and if afterwards asserted from subsequent use, the time necessary to perfect it must begin anew and be computed from the date of such interruption.

3. *Same; same; when act of owner amounts to interruption of use.* Where the owner of land over which a road has been used by the public puts gates across said road and these gates are connected on either side by a fence which forms an inclosure used by said owner, such act evidences an intention on the part of the owner to assume possession of the land over which the road runs, and to withdraw the road from the public use, which destroys the prescriptive right, or makes the running of the prescription begin anew.

APPEAL from the Chancery Court of Pike.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellee against the appellant. The facts of the case are sufficiently stated in the opinion.

[Whaley v. Wilson.]

Upon the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was entitled to the relief prayed for and ordered accordingly. From this decree the defendant appeals, and assigns the rendition thereof as error.

PARKS & SON, for appellant.—The mere fact of acquiescence on the part of the owner of the land in the use and enjoyment of a way by the public, as a public road or highway would not create the presumption of a dedication, until after the lapse of twenty years without some clear and unequivocal act on his part amounting to an explicit manifestation of his intention to make a permanent gift of the road to the public. In this case the evidence clearly shows that it was necessary to open the road as a private way, to be kept open for appellant's own use or as a private way. We think that the evidence in this case fails to show that the opening of the road *per se* is an act so unequivocal and decisive in its character, so inconsistent with every other hypothesis, as clearly to manifest his intention of abandoning the road to the use of the public.—*Hoole & Paullin v. Attorney-General*, 22 Ala. 190 ; *Rosser v. Bunn*, 66 Ala. 89.

D. A. BAKER, *contra*.—It is satisfactorily proven that the road in question was more than twenty years old, as a public road, at the time that respondent made his clearing and changed the route of the original road around it, and that it was irrevocable.—5 Amer. & Eng. Encyc. of Law, 411 ; *Kennedy v. Jones*, 11 Ala. 63 ; *Forney v. Calhoun County*, 84 Ala. 215.

The change made in 1877, or when it was made was never intended as an effort at reclamation or objection to the use of the road by the public, but was in aid and furtherance of such use, and that by the manner of the change respondent represented to the public that it was to be so used, and that by it there was no interference which could impair the road's publicity by user. "The doctrine of equitable estoppel applies with peculiar force to cases of this kind, where the owner of land intentionally, or by culpable negligence leads the public to believe that he had dedicated it to public use, he will upon every principle of fair and conscientious dealing, be

estopped from denying the fact of such dedication." "When once accepted, an easement becomes vested in the public, which is irrevocable."—*Forney v. Calhoun County*, 84 Ala. 215. "A mere change in some parts as to direction does not show a reclamation."—*Harper v. State*, 113 Ala. 91.

SHARPE, J.—The appellee seeks, by bill in equity, to have removed, as a public nuisance, a fence constructed by the appellant across a certain road averred to be a public highway. The only question discussed by counsel is, whether the obstructed road was a public road. Treating the case as it was treated by counsel, and seemingly considered by the chancellor, without deciding whether the facts disclosed by the evidence show that special and particular injury to the complainant, distinct from that suffered by him in common with the general public, which is necessary to the right of a private person invoking the aid of a court of equity to have a public nuisance restrained or removed, we have proceeded to a consideration of the question, whether the obstructed road was a public road. We have carefully examined the evidence, and are constrained to differ with the chancellor as to the character of the road, and to hold that it was, at the time the obstructions were placed upon it, a private road, in which the general public had no easement or right preventing the defendant from obstructing it on his land in such manner as suited his pleasure or convenience.

The road in question, called by one of the witnesses a "settlement road," connects two confessedly public roads, a few miles apart, leading into the city of Troy from different directions, and passes through the defendant's land, and by land owned by the complainant. The obstruction consisted of a fence, constructed by the defendant, inclosing a part of his land through which the road ran; the fence crossing the road at two places. It is not contended that the road was ever laid out as a public road by the county authorities, or that it was dedicated as a public highway by defendant. The contention is, that the road had become public by prescription—by the uninterrupted use thereof by the public,

[Whaley v. Wilson.]

claiming the right to use the same, for twenty years or more, as a public highway.

While it may be admitted that the testimony shows that a road, passing through the defendant's land, and connecting the two public roads leading into the city of Troy, was in use by the public for from thirty to fifty years, the complainant and defendant, both of whom were examined as witnesses, testified that the road originally opened across the defendant's land, and used by the public, had been changed by the defendant. The extent of this change is shown by the complainant's own testimony to have been material and substantial. Speaking on this subject he says : "Said road was changed in part. * * * There was a quarter of a mile of said road, or it may be a little more, that was not changed. All of said road running through said Whaley's land was changed, except a portion of said road at the end where it enters said Troy and Elba road." And again he says : "In 1870 when said road was changed, respondent cleared a place and *moved* the road about *two hundred yards* from where it was before. He cut out this road himself." When the change was made, the testimony shows, the defendant closed up the original road and opened up a new one, almost entirely across the land. The complainant and defendant, however, differ as to the time when this change was made ; the complainant, testifying according to his best recollection, fixed the time when the change was made in the year 1870, while the defendant testified positively that it was made in the latter part of 1877, or in the early part of 1878 ; and the testimony of other witnesses corroborates him in this statement. The burden of proof is on the complainant to show that the obstructed road was a public road, for upon the public character of the road depends his right to relief. He seeks to sustain this burden, first, by showing that the change was made in 1870, more than twenty years before the fence was placed across the road, and, secondly, by contending that, even if in error as to this, the change did not affect the public character of the road. The first is a question of fact, and, after a careful consideration of the evidence, we are clearly persuaded that the decided weight of the testimony is against him, and in favor of the date fixed by

the defendant—1877 or 1878—and less than twenty years prior to the date when the fence was placed across the road. We do not understand from the chancellor's opinion that he found this fact for the complainant; on the contrary, it is clear that he based his decision upon the last proposition contended for. He says : "*Some fifteen or twenty years ago*, the defendant changed a portion of the road by clearing up the land through which it ran, by stopping its course through the land so cleared, and by opening a new road around the clearing. This was neither reclamation of the road as against the right of travel, nor discontinuance of the road. It was rather an acknowledgment of the public right to come and go." To this conclusion we cannot give our assent.

The change made, it is manifest, was a substantial change in the road, the effect of which was to close up the old road, as it ran across defendant's land, and to open up a new one, two hundred yards from the old one. It is well settled that, when the character of a highway depends upon prescription, if the use of the road by the public is, within the twenty years essential to create the prescription, interrupted or broken by an act of the owner of the land over which the road runs, manifesting an intention on his part to withdraw the land covered by the road from use by the public, and of such a nature as to give the public notice that such was the intention, the right by prescription fails, and if afterwards asserted from subsequent use, the time necessary to perfect it must begin anew, and be computed from the date of such interruption.—Elliott on Roads & Streets, p. 137 ; *Shellhouse v. State*, 110 Ind. 509. In the case cited, Mr. Justice MITCHELL, speaking for the court, says : "Before a highway can be thus," that is, by prescription, "established, it must appear that the general public, under a claim of right, and not by mere permission of the owner, used some defined way, *without interruption or substantial change*, for a period of twenty years or more." In the same case, he further says : "A highway, from its very nature, must be open to the public day and night, and any unambiguous act by the owner, such as erecting gates or bars over the highway, which evinces his intention to exclude the public from the un-

interrupted use of the highway, destroys the prescription right, unless it had fully matured before it was interrupted.''

The change was effected by closing up the old road and opening up a new one. The complaint here is against obstructing the new road, or the road as changed, and not the old road, or the road as originally opened. The change being a substantial one, operating to close up the old road, and to open a new one, the time necessary to create the right by prescription must begin to run from the date of the change, which, as we have found, was in 1877 or 1878. Dating from this time, the public had used the road for less than twenty years when the fence was erected, and, therefore, the right by prescription had not been perfected. It follows that the road was not a public road, but a private one, and the defendant, being the owner of the land, had the absolute legal right to close it up by fence, or in such other way as he might select.

It is true that some of the witnesses speak of having known the road and its public use for from thirty to fifty years; but it is manifest that they have reference to a road being used across the land of the defendant, connecting the two public roads leading into the city of Troy, and that they speak of the road as originally opened, and the road, as changed, as one and the same. We do not construe their testimony as denying any change, or as asserting that they had known the road as changed, and its public use, for the period mentioned by them.

There is another fact shown by the testimony that defeats the complainant's right to relief, whether the road was changed in 1870, or in 1877 or 1878. Both the complainant and defendant testified that, prior to the construction of the fence across the road by defendant, the latter placed gates across the road, and these gates were connected on either side by a fence, thus forming an enclosure, and, according to defendant's testimony, which is not contradicted in that particular, the land thus inclosed he "used for his stock to run in." On one of these gates he placed a lock, and thus fastened the gate. The defendant fixes this act of obstruction positively in 1888; the complainant does not attempt to fix

the time, but merely says that it was done "seven or eight years ago." There is no testimony in conflict with that of the defendant in respect to the time when this act was done, but this testimony is rather corroborated by other witnesses. Under this state of the proof, we are forced to the conclusion that the defendant is again right in his dates. This being true, we find that he obstructed the road as early as 1888, less than twenty years after the change, even if that change was made in 1870. The putting of gates across the road, thus making an enclosure for stock to run in, as clearly evidences an intention to assume ownership and possession of the land over which the road ran, and to withdraw the road from public use, as does the subsequent removal of the gates and construction of fences in their stead across the road. *Shellhouse v. State, supra.* It matters not that the lock on one of the gates was broken by some one soon after it was put there, and the public continued to use the road, passing through the gates ; it matters not whether any lock at all was put on either gate. The public use of the road was thus interrupted by a clear and unambiguous act of the defendant, thus destroying the continuity of that use as effectually as a fence or other obstruction would have done. This would be the presumption arising from this act alone ; but this presumption is made conclusive by the accompanying and subsequent acts and conduct of the defendant, which clearly show that his purpose was to withdraw the road from public use. He gave special permission to certain parties to use the road ; and later on he placed a sign on one of the gates forbidding travel ; and he gave a key to the lock on one of the gates to the complainant, and consented that he might use the road. The road may have been afterwards used by persons travelling, but if it was, it was either against his wishes, or by his permission ; in the one event, the parties using it were mere trespassers, and in the other, they accepted the use, not as a matter of right residing in the public, but merely as a privilege accorded to them individually by the defendant. There is no evidence that thereafter he acquiesced in the use of the road by the general public ; but if he did, the running of the prescription, having been once broken, would

[Wyker, Treasurer, &c. v. Francis.]

then begin anew, and thus its commencement would be in or after the year 1888, and not at the time when the change in the road was made, whether that was in 1870, 1877 or 1878.

The question is not whether the defendant was successful in permanently obstructing the road in such a manner as to *prevent* travel; but, whether his act was of a character evidencing to the general public his intention to withdraw the use of the road from the public. If the latter, then there was an interruption of the use, which destroys the prescriptive right, or makes its running begin anew. Admitting, therefore, that the complainant is correct in fixing the time of the change of the road in 1870, still, the right by prescription fails because of the placing of the gates across the road in 1888.

The decree of the chancery court is reversed, and a decree is here rendered dismissing the complainant's bill.

Reversed and rendered.

*Note.*—The foregoing opinion was prepared by Hon. R. C. BRICKELL, late Chief Justice, before his retirement, and is adopted by the court.