**96 So.2d 437**

**Chloe BLEVINS et al.**

**v.**

**Henry McCARTY.**

**7 Div. 270.**

Supreme Court of Alabama.

June 27, 1957.

298

C. A. Wolfes and Leonard Crawford, Fort Payne, for appellee.

W. M. Beck, Fort Payne, for appellants.

COLEMAN, Justice.

Appellants, by bill in equity, seek to enjoin obstruction of a roadway. The trial court denied relief.

The witnesses were not examined orally before the trial judge. Therefore, the case is reviewed here without any presumption in favor of the trial court's finding of fact. Alabama Digest, Appeal and Error, 931(1).

The lands of appellants and appellee lie west of a public road in DeKalb County known as the "Deer Head Cove" road, which runs North and South. Another road known as the "George Gearin" road runs west in a straight line from the Deer Head

Cove road for a distance of about one quarter of a mile to appellants' dwelling house. The George Gearin road lies on or along property lines. The lands of appellee are bounded on the south by the George Gearin road and on the east by the Deer Head Cove road. The lands of Charlie Hartline are bounded on the north by the George Gearin road and on the east by the Deer Head Cove road. On the west side of the Hartline lands are the lands of appellants, which lands also lie on the south side of the George Gearin road.

This diagram will aid in understanding the relative location of the roads and lands here involved.

It appears without dispute that this *straight* George Gearin road has existed for many years and is a public road. Near the east end of the straight George Gearin road, at a point approximately 125 yards west of the intersection with the Deer Head Cove road, a "turn-off" road leaves the straight George Gearin road on its north side and runs eastwardly around a hill through the lands of appellee to intersect the Deer Head Cove road at a point about 30 feet north of the intersection of the straight George Gearin road with the Deer Head Cove road.

The amount of land lying between the "turn-off" road and the straight George

Gearin road is approximately one-fourth of an acre.

This "turn-off" road, about 125 yards long, is the road in controversy. Appellants' brief states the issue as follows:

" * * * Appellants feel that the sole issue presented in this case is whether or not the complainants are entitled to have the road determined a public road by the Court by prescription. * * *

In 1928 or 1929, with the permission of the party who owned appellee's place at that time, the "turn-off" road was opened. The testimony shows that this roadway was opened in connection with logging operations for the convenience of the logger in going around the hill over which the straight George Gearin road runs before entering the Deer Head Cove road.

Appellants contend that the "turn-off" road in controversy has been used continuously by the public and has never been stopped or obstructed since it was opened in 1928 or 1929, until appellee closed the "turn-off" road a short time prior to the filing of the bill of complaint in this case.

Appellants further contend that after the "turn-off" was opened, the public ceased to use that portion of the straight George Gearin road over the hill, and that the unused portion grew up in honeysuckle vines and bushes as big as an arm or leg and became impassable.

Appellee contends that the "turn-off" road in controversy was closed and stopped up and cultivated for two years in 1931 and 1932, and reopened in 1933, and that the portion of the straight George Gearin road over the hill has always been used and never grew up in bushes so as to be impassable.

This suit was filed in 1951. If appellants' contention be correct, the use of the road by the public continued for more than 20 years before appellee attempted to close the road and before this suit was brought. On the other hand, if appellee's contention be correct, the use of the road by the public had not continued without interruption for the full 20 year period before this suit was brought.

■ "The general rule in this jurisdiction is that 'an open, defined roadway, in continuous use by the public as a highway, without let or hindrance, for a period of 20 years, becomes a public highway by prescription.' Central of Georgia R. v. Faulkner, 217 Ala. 82, 114 So. 686, 687." Dickson v. Dickson, 247 Ala. 330, 332, 24 So.2d 419, 420.

The rule also is that such use by the public must continue *without interruption* for the full 20-year period in order to make the rule of prescription apply.

" * * * As has been said, 'when the use of a way has been interrupted, prescription is annihilated, and must begin again, and any unambiguous act by the owner, such as closing the way at night, or erecting the gates or bars, which evinces his intention to exclude the public from its uninterrupted use, destroys the prescriptive right.' * * *" Harper v. State, 109 Ala. 66, 68, 69, 19 So. 901, 902.

" * * * It is well settled that, when the character of a highway depends upon prescription, if the use of the road by the public is, within *the 20 years essential to create the prescription* [emphasis supplied], interrupted or broken by an act of the owner of the land over which the road runs, manifesting an intention on his part to withdraw the land covered by the road from use by the public, and of such a nature as to give the public notice that such was the intention, the right by prescription fails; and, if afterwards asserted from subsequent use, the time necessary to perfect it must begin anew, and be computed from the date of such interruption. Elliott, Roads & S. p. 137; Shellhouse v. State, 110 Ind. 509, 11 N.E. 484. In the case cited, Mr. Justice Mitchell, speaking for the court, says: 'Before a highway can be thus (that

is, by prescription) established, it must appear that the general public, under a claim of right, and not by mere permission of the owner, used some defined way, *without interruption or substantial change,* for a period of twenty years or more.' In the same case he further says: 'A highway, from its very nature, must be open to the public day and night; and any unambiguous act by the owner, such as erecting gates or bars over the highway, which evinces his intention to exclude the public from the uninterrupted use of the highway, destroys the prescriptive right, unless it had fully matured before it was interrupted.' " Whaley v. Wilson, 120 Ala. 502, 506, 507, 24 So. 855, 856.

" * * * This court stated upon the former appeal of this case ([Cochran v. Purser], 152 Ala. 354, 44 So. 579) the rule as to the presumption of a dedication, and that the user of the alley had to continue uninterrupted for 20 years before the presumption of a dedication would arise. * * *" Cochran v. Purser, 160 Ala. 540, 542, 49 So. 353.

"In order for a way to become a public street or alley by prescription there must be an uninterrupted user as a street or alley by the general public without let or hindrance for a period of twenty years. Locklin v. Tucker, 208 Ala. 155, 93 So. 896; Ritter v. Hewitt, 236 Ala. 205, 181 So. 289; Scruggs v. Beason, 246 Ala. 405, 20 So.2d 774." Parker v. Fuller, 248 Ala. 457, 458, 459, 28 So.2d 207, 208.

■■ Conceding, without deciding, that the character of use of the "turn-off" road in the instant case was such as to be adverse to appellee and his predecessors in title so as to make the doctrine of prescription apply, the further burden remains on the appellants to establish the fact that such use by the public had continued without interruption for the full 20 years.

"The burden of proof is on the complainant. * * *" Parker v. Fuller, supra.

The evidence is in direct conflict on the question of fact as to the obstruction or stopping up of the "turn-off" road in 1931 and 1932, and its reopening for the last time in 1933.

Uncle Bill Henagar, who was in possession of appellee's place in 1931 and 1932, testified that he had never stopped up the road and had never cultivated it. On cross-examination, however, he testified that he cultivated on both sides of the disputed "turn-off" road as follows:

"Q. How wide is this place you jumped your plow over there? A. The width of my wagon. I just throwed up enough to get by on. They have made it wider with the grader in grading it up they just kept pulling it up."

Sam Davis testified that he helped Henagar build the "turn-off" road but that he was not there when Henagar cultivated it. Pertinent questions to and answers of Davis are as follows:

"Q. Do you remember back in 1931 and 1932 when Mr. Henagar plowed it up and they used the straight road? A. No.

"Q. Were you through there at that time? A. I don't remember about that. I know I wasn't there when he cultivated it. I don't remember it."

L. C. Stallings testified that he moved to appellee's place for two years in 1932 and 1933 and that the land adjacent to the "turn-off" road had been plowed up but the road had not.

For appellee, M. N. Gearin testified that he was 51 years old, that from 1911 to 1950 he lived on his father's place which is the place now owned by appellants, and that in 1931 and 1932 Bill Henagar closed and cultivated the "turn-off," that he, the witness, was taking the daily paper and went over the straight old road practically every day.

Mrs. Jerusha Gearin, wife of M. N. Gearin, testified that she lived on appellants' place from 1929 to 1950, that Mr. Henagar closed the "turn-off" in 1931 and 1932, put brush across it and signs "for us not to travel it," that Luther Stallings reopened the "turn-off" in 1933.

Charles H. Hartline, 85 years old, testified that he lived on the place lying south of the George Gearin road east of and adjoining appellants' land, that he had lived there for 63 years, that the "turn-off" road was stopped up at both ends in 1931 and 1932, plowed up and planted in corn, and reopened in 1933.

Other witnesses testified, including the parties. We have carefully considered the entire record before us, but we are not convinced that appellants have supported the burden of proof requiring them to show uninterrupted user of the disputed "turn-off" road for the full 20-year period.

The decree appealed from is in accord with the views herein expressed and is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and MERRILL, JJ., concur.