114 So.2d 898

**I. V. WESTON, Jr., Executor,**

v.

**G. H. WESTON.**

**4 Div. 971.**

Supreme Court of Alabama.

Oct. 8, 1959.

A. B. Robertson, Jr., Clayton, Chauncey Sparks, Eufaula, for appellant.

Crews Johnston and Jack W. Wallace, Clayton, for appellee.

LAWSON, Justice.

This is an appeal from a final decree of the Circuit Court of Barbour County, in Equity.

I. V. Weston and G. H. Weston were adjoining landowners in Barbour County. By separate written instruments each of them gave to the D. M. Wilson Bauxite Company the right to mine iron ore and to erect and operate an iron ore washer on his land.

The Bauxite Company agreed to pay so-called washer fees to the owner of the land upon which the washer was ultimately erected.

After the washer was completed and in operation it was determined that a part of it had been erected on land which I. V. Weston and G. H. Weston both claimed to own and which was embraced in the lease which each of them had executed to the Bauxite Company. The other part of the washer was erected on land which unquestionably belonged to I. V. Weston.

I. V. Weston claimed all of the washer fees on the theory that the washer had been erected entirely on his land.

G. H. Weston, contending that a part of the washer had been constructed on his land, claimed some of the washer fees.

In order to settle their adverse claims to the washer fees, the Bauxite Company filed a bill of interpleader pursuant to Equity Rule 36, Code 1940 Tit. 7 Appendix, against I. V. Weston and G. H. Weston.

I. V. Weston in his answer to the bill of interpleader alleged ownership and possession of the disputed area and claimed all of the washer fees.

G. H. Weston filed an answer which he made a cross bill wherein he alleged fee simple title to the disputed area and claimed a part of the washer fees. The Bauxite Company and I. V. Weston were made parties respondent to the cross bill. Both answered the cross bill. In his answer I. V. Weston alleged ownership and possession of the disputed area and again claimed all of the washer fees. The contents of the answer of the Bauxite Company to the cross bill need not be stated.

The cause came on for hearing before the chancellor and a jury, which was requested by G. H. Weston. § 322, Title 7, Code 1940.

During the course of the trial I. V. Weston died. I. V. Weston, Jr., as executor of the estate of I. V. Weston, was substituted in his stead. Act No. 708, General Acts 1947, p. 543 (1955 Cum.Pocket Part, Vol. 2, Code 1940, p. 34, where the compiler and publisher of the Pocket Part refers to the provisions of the 1947 act as § 153(1), Title 7); Equity Rule 35. See Ex parte Little, 266 Ala. 161, 95 So.2d 269.

The trial court decreed that the disputed area belonged to G. H. Weston and that the washer fees be divided equally between I. V. Weston, Jr., as executor, and G. H. Weston.

I. V. Weston, Jr., as executor, has appealed to this court.

Appellant contends that even if it be determined that his intestate did not have paper title or title by adverse possession, his lease should prevail for he was holding the disputed area adversely at the time the leases were executed and the G. H. Weston lease was therefore void.

This insistence seems to be grounded on the statements found in some of our early ejectment cases to the effect that a con-

veyance of lands which are, at the time of the conveyance, in the adverse possession of a third person, under claim of title, is void as against the adverse holder, and will not sustain an action of ejectment against him to recover possession. Sharp v. Robertson's Ex'rs, 76 Ala. 343; Stringfellow v. Tennessee Coal, Iron & R. Co., 117 Ala. 250, 22 So. 997.

■ Even if it be conceded that the evidence shows that appellant's intestate was holding the disputed area adversely at the time the leases were executed and that the rule of the Sharp and Stringfellow Cases could ever have applied to a case of this kind, that rule can have no effect here, for it has been abrogated by statute as to conveyances executed subsequent to the effective date of § 3839, Code 1907, now § 938, Title 7, Code 1940. See Williams v. Muckelroy, 221 Ala. 531, 129 So. 476; Grayson v. Muckleroy, 220 Ala. 182, 124 So. 217; Spradling v. May, 259 Ala. 10, 65 So.2d 494.

■ Moreover, the whole course of the trial and the decree itself show that the issue was upon the title to the disputed area and we are impelled to so regard that as the issue here. Phillips v. Phillips, 186 Ala. 545, 65 So. 49. A case will not be reviewed on a theory different from that on which it was tried below. Ellerbee v. Atlantic Coast Line R. Co., 258 Ala. 76, 61 So. 2d 89; Inter-Ocean Ins. Co. v. Banks, 268 Ala. 25, 104 So.2d 836.

We have two parties who claim a tract of land which is included in the chains of title claimed by each of them. Neither has shown title back to the government.

The first deed under which I. V. Weston claimed title is dated Novemeber 23, 1905. It is from F. B. Pierce to Aaron Price and includes in the description the area in dispute.

■ Contrary to the insistence of counsel for appellant, there is no legal evidence going to show that F. B. Pierce purchased the property from one B. B. McKenzie. Appellant's witness F. D. Veal did testify to the effect that F. B. Pierce told him that he purchased the property from B. B. McKenzie. It is our understanding of the record that this statement will not be considered by us, for we are considering here only such testimony as is relevant, material, competent and legal. Act No. 101, approved June 8, 1943, General Acts 1943, p. 105; 1955 Cum.Pocket Part, Code 1940, Title 7, § 372(1); Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115. A party in possession of land may make declarations explanatory of his possession, and either may claim or disclaim ownership, no matter who may be parties to the suit. However, his declarations as to the source of his title and as to past transactions, or contracts in respect thereto, are not admissible. Granade v. United States Lumber & Cotton Co., 224 Ala. 185, 139 So. 409; Shelton v. Stapler, 219 Ala. 15, 121 So. 34; Doe ex dem. Hooper v. Clayton, 81 Ala. 391, 2 So. 24; Dothard v. Denson, 72 Ala. 541; Daffron v. Crump, 69 Ala. 77.

Aaron Price on May 31, 1937, executed a deed wherein he attempted to convey certain property to his daughter Maude, the wife of I. V. Weston.

On June 30, 1948, Mrs. Maude P. Weston executed a deed to her husband, I. V. Weston, wherein the disputed area is described along with other lands.

But the record before us does not show that Mrs. Maude P. Weston acquired the area in dispute in the deed from her father under date of May 31, 1937. The description in that deed reads as follows: "That certain part of the tract of land known as the McKenzie land lying N. E. of Louisville, Alabama, and being bounded as follows to wit. On North by land owned by W. A. Bell. On East by M. N. McEachern and M. L. Beasley or Did Hurst land. On South by M. N. McEachern and A. R.

Andrews lands and on the East by lands of J. H. Blair and lands this day deeded to Maggie Green. Said tract of land in this deed is two hundred fifteen acres more or less and all 'being in Barbour County, Alabama."

This description if aided by extrinsic evidence might be sufficient to identify the lands conveyed. See Eufaula National Bank v. Pruett, 128 Ala. 470, 30 So. 731; Scott v. McDonald, 249 Ala. 464, 31 So.2d 351; Lavender v. Ball, 267 Ala. 104, 100 So.2d 331, and cases there cited.

But this record does not contain any such extrinsic evidence. There is some evidence tending to show that the property acquired by Aaron Price from F. B. Pierce was sometimes referred to as the McKenzie place. But Aaron Price in his deed to Mrs. Maude P. Weston attempted to convey only a part of the McKenzie place and there is nothing in this record which identifies the part he intended to convey or which tends to show that the area in dispute is included within the boundaries referred to in the description.

There is no evidence in this record going to show that Bell, McEachern, Beasley, Hurst, Andrews or Blair owned any lands near Louisville, Alabama, or at any other place at the time the deed was executed. The record does not show the lands conveyed to Maggie Green. It is also noted that no western boundary is included in the description. In regard to the eastern boundary, the evidence in this case shows that the lands to the east and northeast of the Price lands were owned by the Flournoys in 1937 and no mention is made of that fact in the description.

Appellant introduced in evidence a "Map of the Ivy Weston Land" made in May, 1948, by C. A. Pickett, a registered surveyor. This map indicated that the area in dispute belonged to Ivy Weston.

But Ivy Weston did not secure his deed until June 30, 1948, at least a month after the map was made.

The surveyor, Pickett, was not called as a witness and there is nothing in the record before us to support a conclusion that the map was based on the description included in the 1937 deed from Aaron Price to Maude P. Weston.

The deed from Aaron Price to Maude P. Weston purported to convey 215 acres more or less. The deed from Maude P. Weston to I. V. Weston covers approximately 238 acres. The area in dispute is twenty-four acres, approximately the amount of the excess of land described in the deed from Mrs. Weston to her husband over that purported to be conveyed in the deed to her from her father, Aaron Price.

It seems to be conceded that appellee, G. H. Weston, has shown an unbroken chain of paper title dating back to January 13, 1881, when one D. McKenzie conveyed the land in question to his daughter, Mrs. Susan Flournoy, and three of her children. The deed of June 18, 1839, by one Daniel McKenzie to one Bethune B. McKenzie, which appellant introduced in evidence for the purpose of showing that D. McKenzie in 1881 had no title to the area in dispute, was not recorded until February 14, 1958, several months after this litigation was begun and long after all the conveyances in appellee's chain of title were recorded. Moreover, there is nothing in the record to show that "D. McKenzie" and "Daniel McKenzie" are one and the same person. Hence, in this state of the record, the 1839 deed can have no effect on the appellee's chain of title.

■ In view of the foregoing, we hold that the record before us shows that G. H. Weston has the better paper title.

We come now to a consideration of appellant's claim that title to the disputed area was in his intestate under the doctrine of prescription.

Appellant sought to establish adverse occupancy and user of the property by his intestate and those under whom he claimed for more than twenty years.

The land in dispute is rough. Very little of it has been subject to cultivation. Much of it is covered by trees and underbrush. There are two or three big gullies on it.

The burden of proving the possession adverse—that it was taken and held under a claim of title hostile to the title of the true owner—rests upon the party asserting it. Dothard v. Denson, supra.

Ownership and possession of land are each facts, to be proved by evidence as other facts are proved. Neither can be proved by general notoriety, nor by reputation. Doe ex dem. Hooper v. Clayton, supra.

Appellant called a number of witnesses, but many of them did no more than testify that I. V. Weston and those under whom he claimed always claimed the property in dispute and that a certain branch was generally recognized as the eastern boundary line of the I. V. Weston property.

There was testimony offered on behalf of appellant tending to show that at intervals since 1905 Aaron Price and I. V. Weston cultivated small areas of the disputed tract. There was also testimony relative to the spasmodic cutting of timber from the disputed area under the authority of Price and I. V. Weston. But such testimony falls short, in our opinion, of showing an actual continuous user of the area in dispute during a twenty-year period. Turnipseed v. Moseley, 248 Ala. 340, 27 So.2d 483, 170 A.L.R. 882.

In a bill of interpleader a claimant must recover on the strength of his own title and not on the weakness of the title of his adversary. Prudential Ins. Co. of America v. Cahill, 321 Ill.App. 45, 52 N.E. 2d 481. As between the respondents compelled to interplead, recovery rests upon the strength of the claim of one, rather than upon the weakness of the other. In

Lawrence v. Paden, 76 Ill.App. 510, 514, it is said:

"A cross bill would seem to be unnecessary as between the defendants to a bill of interpleader. It is only necessary for them to set up their grounds of claim or right to the subject-matter of the bill, and the court can then adjudge who has the better right and, under the prayer of the bill, decree accordingly."

We are of the opinion after a careful consideration of the record before us that the appellee, G. H. Weston, has shown the better right to the washer fees here involved and that the trial court was correct in so decreeing.

As we have heretofore indicated, the trial court submitted the issue of fact to a jury which responded thusly: "We, the jury, vote eight for G. H. Weston and four for I. V. Weston—Alto Boyd, Foreman."

Thereafter the trial court entered a decree which contains the following language:

"And the court having heard the witnesses, and having considered only legal evidence, and having been advised by the jury by its verdict that respondent, G. H. Weston is the lawful owner of the tract of land in question, is of the opinion that respondent, G. H. Weston, is the fee simple owner of said land."

Obviously the trial court was in error in observing that the jury had in fact rendered a verdict. The members of the jury were not in agreement.

However, we do not think that the reference to the so-called jury verdict should vitiate the decree. Neither side was entitled to a jury trial as a matter of right. But the trial court was authorized to submit the issue of fact to a jury for decision for the purpose of "enlightening the conscience of the chancellor." Alabama, T. & N. R.

Co. v. Aliceville Lumber Co., 199 Ala. 391, 74 So. 441, 445. Even if there had been a jury verdict in proper form it would have been advisory merely and could have been rejected by the trial court. Lucas v. Scott, 247 Ala. 183, 24 So.2d 540; Jones, Trial by Jury in Alabama, 8 Alabama Law Review, p. 274.

■ Inasmuch as the evidence was taken orally before the trial court as well as before the jury, there is a presumption in favor of the court's finding in regard to matters about which there was a conflict in the evidence, although the court did apparently adopt the view of the majority of the members of the jury.

■ The lower court taxes all of the costs against the appellant. Equity Rule 36 provides that the trial court may tax costs in interpleader cases at its discretion. However, the matter of taxation of costs in equity cases is subject to review here. Sibley v. Hutchinson, 218 Ala. 440, 118 So. 638.

■ We are of the opinion that appellant should not have been taxed with the costs in this case and that the costs should have been ordered paid out of the fund the subject of the suit. In Morris v. Waldrop, 213 Ala. 435, 440, 105 So. 172, 177, we said: "The lower court was correct in the provision for the costs of the bill of interpleader in that court to be paid out of the fund the subject of the suit."

The decree of the Circuit Court, in Equity, is affirmed in all respects except as to taxation of costs. In that respect the decree will be here modified so as to provide that the costs in the trial court be paid out of the fund the subject of the suit.

The costs of this appeal are taxed one half against the appellant, as executor of the estate of I. V. Weston, and one half against the appellee, G. H. Weston.

Modified and affirmed.

SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.