215 So.2d 282

**Joe S. MACHEN, Jr.**

v.

**W. F. WILDER et al.**

**7 Div. 772.**

Supreme Court of Alabama.

Oct. 31, 1968.

Dortch, Allen, Wright & Wright, Gadsden, for appellant.

Lusk, Swann, Burns & Stivender, Gadsden, for appellees.

the recorded A. L. Small Addition to Alabama City.

Appellant, Joe S. Machen, filed an answer and cross bill in which he denied appellees' peaceable possession, claimed that he had been the legal owner of the property for over forty years, and set out his title back to 1924. He set out appellees' title, and alleged that appellees' predecessor in title had been given permissive use of a portion of the strip he claimed for use as a driveway, and prayed that he be declared the legal title holder to the strip in controversy.

These facts are undisputed: Lot 1, Block 1 of the A. L. Small Addition fronts Bomar Street 195 feet on the west and is bounded by Lookout Avenue on the south, 54.9 feet and an alley on the north 54.9 feet. Lot 2 is east of Lot 1. It is also 195 feet by 54.9. Appellees own Lot 1 which has a house on it near the line between Lots 1 and 2, and facing Lookout Avenue on the south. Appellant owns Lots 2, 3 and 4 and a house is on those lots. A. L. Small platted these lots prior to 1924 and on July 15, 1924, he sold Lots 2, 3 and 4 to Gordon B. Moore, and built a house on Lot 1 which he retained, and Small lived in the house until he sold Lot 1 to E. D. Gross in 1933. The Grosses moved away in 1951 and rented Lot 1 until they sold it to appellees, their daughter and son-in-law, in 1962. Each of these conveyances described the property conveyed as Lot 1 in Block 1.

Appellant's predecessors in title were his father, his grandmother and an uncle. His father purchased the land from his grandmother in 1936, and he had lived on the property since he was five or six years old and his age was forty at the time of the trial. His conveyances of title had described all of Lot 2; he and his predecessors had paid taxes on all of Lot 2 and he had paid the paving assessments on the entire width of Lot 2.

Also undisputed is that appellees and their predecessors in title had used the driveway that was west of an old hedge

MERRILL, Justice.

This appeal is from a decree quieting title in complainants to a parcel of land claimed by coterminous owners.

Appellees' bill of complaint alleged that they, W. F. Wilder and wife Edna, were in peaceable possession under claim of right to a strip of land fronting 15 feet on Lookout Street in Gadsden, running back approximately 195 feet and widening to a width of 30 feet on the back, being the west portion of Lot 2 in Block 1 of

row, and had maintained it by putting down gravel and slag and had been in the actual possession of the driveway for more than twenty years.

When the boundary line between Lots 1 and 2 was surveyed, the corner and the true line was found to be in the driveway.

The trial court held that appellees were entitled to a strip of Lot 2 beginning at the southwest corner of Lot 2 on Lookout Avenue, thence north along the west line of Lot 2 for 133.25 feet, thence east 14.38 feet, thence back south toward Lookout Avenue 133 feet to a point which was 8.7 feet east of the southwest corner of Lot 2 and thence west to the point of beginning. This probably was a description of that part of the driveway use by appellees, but nowhere in the record is there any proof or record of such a description.

The trial court correctly held that appellees had no claim on the remainder of Lot 2 between the driveway and north to the alley because there is no evidence to support a claim to that part of the lot.

The main question presented to us is whether the evidence supports the holding of the court that the part of Lot 2, which we have presumed was a description of the driveway, was the property of appellees instead of appellant.

The usual presumption accorded the findings of the trial court cannot be indulged in this cause. The testimony was taken before Circuit Judge Virgil Pittman, but shortly thereafter, and before deciding this case, Judge Pittman accepted an appointment to the federal judiciary. His successor decided the case and rendered the decree before us on appeal.

Where none of the evidence was taken orally before the judge rendering the judgment or decree, there is no presumption in favor of his findings from the evidence on appeal. We must sit in judgment on the evidence. Henslee v. Merritt, 263 Ala. 266, 82 So.2d 212; Blevins v.

McCarty, 266 Ala. 297, 96 So.2d 437; Gibson v. Bryant, 267 Ala. 97, 100 So.2d 32.

In a statutory suit to quiet title, a prima facie case is made where it is shown that the complainant is in the peaceful possession of the land, either actual or constructive at the time of the filing of the bill and that there was no suit pending to test the validity of title, and the burden is then upon the respondent to establish his claim to the land. Burkett v. Newell, 212 Ala. 183, 101 So. 836. But when the respondent shows legal title to the land, the burden of avoiding it by showing superior title by adverse possession shifts to the complainant. Stewart v. Childress, 269 Ala. 87, 111 So.2d 8; Merchants National Bank of Mobile v. Hall, 278 Ala. 319, 178 So.2d 146.

Here, appellant-respondent showed the only record title to Lot 2 for over twenty years, while appellees showed actual possession of the driveway for over twenty years. Under the authorities cited supra, the burden was on appellees to show that this twenty-year possession was adverse. Appellant claims the possession was permissive, and appellees claim it was adverse.

In Stewart v. Childress, 269 Ala. 87, 111 So.2d 8, we said :

"* * * We quote the applicable rule from the case of Dothard v. Denson, 72 Ala. 541:

" 'The mere possession of land is not prima facie adverse to the title of the true owner. *All presumptions and intendments are favorable to the title, and possessions are not presumed to be hostile, but rather in subordination to it.* * * * But, though this presumption attaches to the possession—that it is an occupancy by right— the presumption disappears in the presence of the title. When the title is shown not to attend the possession, but that it resides in another, the law, not favoring wrong, will not presume that the possession was taken, or is held and claimed, in hostility to the title. *The burden of proving the*

*possession adverse—that it was taken and held under a claim of title hostile to the title of the true owner—rests upon the party asserting it.* [Cases cited.]' (Emphasis supplied.) "This principle was reaffirmed in White v. Williams, 260 Ala. 182, 69 So.2d 847. This last cited case also gave expression to the principle that a permissive possession does not ripen into title unless there has been such a repudiation of the permissive possession as to afford notice of an adverse claim. In further illucidating the principle it was also held: Limitations begin to run from the date of notice of hostility but are not operative before hostility is shown, and whether the possession was with the intention of claiming title is generally held to be a question of fact; a permissive occupant cannot change his possession into adverse title no matter how long possession may be continued, in the absence of a clear, positive and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge; there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile.

"This Court has repeatedly held that where one claims title to land through an unbroken chain of record title against another who relies upon adverse possession under color of title, a very strict burden to establish his title rests upon the one claiming adverse possession. Hagan v. Crowley, 265 Ala. 291, 90 So.2d 760; Spradling v. May, 259 Ala. 10, 65 So.2d 494; Duke v. Harden, 259 Ala. 398, 66 So.2d 899. We said in Spradling v. May, supra [259 Ala. 10, 65 So.2d 498]:

" 'The law places such a high dignity upon a regular documentary title and requires such strict formalities to evidence it that a necessary concomitant is that in order to work a divesture of that title by adverse possession, all the essential elements must be proven by the stated measure of proof, and that proof must show that there has been an actual occupancy, clear, definite, positive, notorious, continuous, adverse and exclusive for the requisite period under claim of right of the definite tract involved.' "

■ We are not convinced that the evidence shows that appellees' possession was hostile prior to the filing of this suit. We will not attempt to set out all the evidence, but will state that which we think is overwhelming to show that the possession of appellees and their predecessors was not hostile. (There is a serious question of the tacking of one possession with that of a previous grantor who did not describe any land in Lot 2 but we pretermit any further discussion of that point, because we do not think the evidence shows that the possession was adverse.)

A. L. Small, the common source of title, and appellees' first witness, testified that a house was already on Lots 2, 3 and 4 when he sold to Moore in 1924, but shortly he built a house on Lot 1 and graded a driveway between the east side of his new house and the hedge. The grading of the driveway was finished on November 12, 1924. He testified that when he sold Lot 1 to Gross in 1933 that he sold it as Lot 1, that there was no discussion as to the location of the driveway or the corners of the lot; that he intended to sell only that which he owned, that the exact location of his east property line was "all guess work with me" and he did not know if the hedge was supposed to be his east line, and he thought his east line was inside the hedge. Small was rather careful when asked about that property he put Gross in possession of when he sold to him.

"Q I see. Now when you sold this property to Mr. Gross, did you put Mr. Gross in possession of the property up to the hedgerow?

"Q And the driveway?

"A I give him my title to Lot No. 1, fifty-four feet and three inches, I believe was the correct dimensions.

Nothing said about nothing, only that the property—the lot and all improvements—now if that would be considered improvements, that taken it.

"Q Did you consider the driveway up to the hedge as part of the property that you sold to Mr. Gross?

"A I considered the driveway that was graded out and slaged or cindered— I considered that my property, but I don't say it was up to the hedge.

\* \* \* \* \* \*

"Q And all the property you owned, occupied, or claimed, you put Mr. Gross in possession of?

"A In that particular lot.

\* \* \* \* \* \*

"Q You have never at any time intended to sell Mr. Moore property and then claim part of it as yours, did you?

"A No.

\* \* \* \* \* \*

"Q All right. As I understand your testimony, at the time you sold this lot to Mr. Gross, it was your intention to sell him exactly what you owned, which was Lot No. 1, which was 54.9 feet?

"A That is all I owned, yeah."

Another witness for appellees, Lloyd Wagnon, a qualified surveyor, testified that Mr. Wilder had told him, some two years before, that he (Wilder) and appellant thought there was a small amount of land between the lot lines and the hedge; that he (Wilder) had been using it and he wanted to clear that up while everybody was in peaceful agreement; that when he ran the true line between the lots, both Wilder and appellant seemed surprised. Later, he projected a line for appellees through the hedge and the length of the lot, but Wilder asked him to include 5 feet more of Lot 2, which he did, and that was the description which he furnished appellees for use in the instant suit.

Appellant's witness, George W. Minton, testified that he rented the Lot 1 property from E. D. Gross and lived there three or four years, and that Gross informed him, when he rented, that the driveway was on the property of appellant.

It was undisputed that, before the suit, appellees asked appellant and his wife to their house and asked appellant to sell them some of Lot 2 near the hedge because appellees wanted to widen the driveway and build a double garage for their car and truck. Appellant asked $600 but appellees said that was too much. However, appellant told them it was all right for them to park the truck on his property, and if it became unsatisfactory he would let them know.

Appellant testified that when Wilder moved to Lot 1 in the spring of 1962, he told Wilder that the driveway, or most of it, belonged to him (appellant) and he did not want him to move in with any misunderstanding. Wilder stated to him that he understood, and that Mr. Gross, his father-in-law, had explained it to him. Wilder had requested permission to use some space on Lot 2 behind or north of the driveway to set up a gym set and another piece of play equipment for Wilder's children to play on, and Wilder agreed to keep the grass mowed. Appellant agreed and the gym set was still there when the trial was taking place.

Appellant also testified to several discussions with Wilder concerning selling or trading a portion of Lot 2 so Wilder would have sufficient room for a driveway, and he testified to conversations he had with Mr. Gross and that Gross and his renters had used the driveway up to the hedge, but with permission.

We think it is significant that Wilder did not take the stand and appellant's testimony listed in the preceding two paragraphs was not refuted or disputed.

Under the authority of Stewart v. Childress, 269 Ala. 87, 111 So.2d 8, and the cases cited therein, we hold that the pre-

ponderance of the evidence shows that the use of the west part of Lot 2 by appellees and their predecessors in title was permissive and not hostile or adverse until the filing of this suit by appellees. This results in our holding that the true, platted line between Lots 1 and 2 must prevail.

It follows that the decree of the trial court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.