266 So.2d 841

**M. C. DIXON LUMBER CO., Inc.,**
a corporation,

v.

**J. C. MATHISON.**

4 Div. 436.

Supreme Court of Alabama.

Sept. 14, 1972.

Halstead, Whiddon & Woodham, Headland, for appellee.

———◆———

Preston C. Clayton, Eufaula, for appellant.

PER CURIAM.

The M. C. Dixon Lumber Co., Inc., a Corporation, appellant and complainant below, hereinafter referred to as Dixon, filed its bill on March 28, 1964 against J. C. Mathison, appellee and respondent below, hereinafter referred to as Mathison, in the Circuit Court of Henry County, in Equity, seeking a decree settling and quieting the title to the SW¼ of the NW¼, Section 18, Township 8 North, Range 29 East, Henry County, Alabama, and calling upon Mathison to set forth any claim in the land that he may have. Dixon now prosecutes

this appeal from an adverse final decree holding Mathison to be the owner of the fee simple title in the property except for an undivided one-half interest in the minerals, and holding that Dixon has no claim or title to the property.

The trial court found, among other things, that prior to the filing of the suit Mathison had conveyed one-half of the mineral interest in the property to his brother; and this would appear to be the basis for the court declaring that one-half the mineral interest was not vested in Mathison at the time of the decree.

In its amended bill, Dixon alleged in substance that it was in peaceable possession of the land and held the record title thereto by a deed from one Sam T. Jones. It also alleged a series of conveyances between it and Mathison from 1952 to 1956 relative to the subject property, together with other property, including two deeds in 1955 and one in 1956 executed by Dixon to Mathison, which deeds were not intended to convey any interest in the subject property to Mathison.

Mathison did not demur to the amended bill but filed an answer denying peaceable possession in Dixon but admitting the conveyances alleged, and claiming that the effect of the three deeds was to convey title to him. He also claimed title by adverse possession and a deed from one A. J. Palmer, and prayed the court to enter a decree settling title to the property.

The evidence in the case was taken before a commissioner and upon being reduced to writing was submitted to the court for final decree.

· The evidence in the case is that on May 5, 1952, Mathison executed a first mortgage to Dixon on 1380 acres of land in Henry County. The 1380 acres were listed by legal description in the mortgage and included the subject forty acres by description as follows: " * * * and the southwest quarter of northwest quarter of Section Eighteen (18), Township eight (8), Range twenty nine (29). Said lands being bought from A. J. Palmer."

Each of the conveyances subsequently made between these parties, including the two deeds in 1955 and the one deed in 1956, used the identical description of the 1380 acres, including the subject property, as was used in this first mortgage.

The consideration of this mortgage was a loan of $8,000.00 without interest, evidenced by one promissory note in the amount of $8,000.00, bearing even date with the mortgage and payable in twenty years.

On May 5, 1952, as additional security for this loan, Mathison executed to Dixon a timber option. This was an option given to Dixon "during the period of twenty (20) years from this date" upon the 1380 acres to cut all pine and hardwood which measured six inches in diameter and over, six inches above the ground "at the time of cutting the same." The option provided that if Dixon should exercise its privilege to cut the timber within the twenty-year period, the indebtedness of $8,000.00 should be cancelled. If the option were not exercised, the note became due and payable.

Mathison testified that he had nothing to do with the preparation of the first mortgage and timber option and that the first time he saw these documents was in Dixon's office on the date of the signing of the same.

On November 7, 1952, Dixon purchased by warranty deed from one Sam T. Jones several tracts of real estate in Henry County, including the subject property described by governmental subdivisions.

This deed noted that in a prior conveyance of this property in the chain of title the Federal Land Bank of New Orleans had reserved one-half interest in all minerals in the subject property, and that the present deed from Jones to Dixon was made subject to such prior reservation. This title in Dixon goes back to the Federal Government.

On December 28, 1953, Mathison, in consideration of an additional loan from Dix-

on of $3,500.00, executed a promissory note to Dixon payable on or before December 28, 1958 bearing interest at six percent per annum. He also executed on the same date a second mortgage on the 1380 acres as security for this loan. And on the same date as further security and "* * * in consideration of thirty five hundred ($3500) dollar loan this date made * * *" Mathison executed an option to Dixon to purchase the 1380 acres (less one-half interest in the minerals) at any time elected by Dixon but not sooner than five years from December 28, 1953, nor later than seven years from such date, for the sum of $8,500.00. The option to purchase further provided that if Dixon exercised its right to purchase and paid the sum of $8,500.00, Mathison would execute a full warranty deed conveying good, merchantable, fee simple title to the 1380 acres.

On the same date, December 28, 1953, as additional security and in further consideration of the $3,500.00 loan, Mathison conveyed by warranty deed to Dixon "* * * an undivided half interest in and to all oil, gas, bauxite and other minerals in, * * *" or under the 1380 acres.

This deed also conveyed "* * * the bonus, rentals and royalties which may be due or become due and payable for the interest hereby conveyed, together with all the rights and privileges necessary for the operation and development of said premises for oil, gas, bauxite, or other materials, and also the right to erect and maintain such improvements and equipment in and upon said lands for the purpose of removing said oil, gas, bauxite or other minerals therefrom." The grantor warranted and agreed to defend the title to the lands described. The conveyance was for a period of five years from date, or until the option to purchase the land which was given on the same date should be exercised.

On June 14, 1948, Mathison purchased from one A. J. Palmer by warranty deed the following described real property situated in Henry County:

"The S½ of the NW¼ and the SW¼ of the NE¼ of section 13, Township 8, Range 28, containing in all 120 acres, more less, and known as the Alford Malone Place, and being the same land conveyed to grantor herein, A. J. Palmer, by deed of S. R. Vann and wife Kate Vann dated December 16, 1919, * * *."

It is to be noted that this deed described property in a section and range different from the section and range of the legal description of the subject property. The record does not disclose that this deed of June 14, 1948 was ever amended or corrected. The record of title of A. J. Palmer is not shown to come from the government or a source common with Dixon's title.

On April 4, 1955, Mathison filed an equity suit against Dixon in the Circuit Court of Henry County alleging that the two mortgages, timber option, option to purchase, and mineral deed were security for the two loans, and praying the court to fix the amount due on the loans and to allow Mathison to redeem the 1380 acres from the encumbrances of Dixon.

On August 16, 1955, the parties settled this suit by Mathison paying to Dixon the sum of $15,000.00, and Dixon executing a power of attorney to the probate judge to satisfy the two mortgages, which was subsequently done. As a part of this settlement agreement, Dixon executed on August 16, 1955 a cancellation and release as to the option to purchase, and he also executed on the same date as a part of the settlement two deeds prepared by the attorney for Mathison. It should be noted that as of the date of the execution of these two deeds, Dixon held the record title (less one-half the minerals) to the subject property.

One of the deeds of August 16, 1955, from Dixon to Mathison is, in part, as follows: "Know all men by these presents, that M. C. Dixon Lumber Company, Incorporated, * * * for and in consideration

of One Dollar and other good and valuable consideration, * * * does hereby grant, bargain, sell and convey unto the said J. C. Mathison all pine and hardwood timber of every kind and description suitable for sawmill and pulp wood purposes, or any other purpose, which will measure six (6) inches in diameter and above, six (6) inches above the general level of the ground, standing, growing and being upon the real property described as follows: * * *." The 1380 acres are then described.

The deed then continues:

"Also, for the hereinabove recited consideration * * * (the grantor) does hereby grant, bargain, sell and convey unto the said J. C. Mathison, all and singular the rights, privileges, option, interests, agreements covenants, duties and powers, together with the options, granted, conveyed, assigned and transferred to it by that certain conveyance executed to it by J. C. Mathison and Eudine Mathison, on May 5, 1952, * * * *It being the intention and purpose of the said grantor to divest itself of everything conveyed to it by said conveyance and to invest in the said J. C. Mathison everything it received by virtue and under said conveyance, and that the options therein granted to it shall henceforth be null and void.* (Emphasis added).

"To have and to hold unto the said J. C. Mathison, his heirs and assigns forever. And the said M. C. Dixon Lumber Company, * * * hereby warrants that it is the true and lawful owner of the property rights and privileges conveyed hereby; * * *."

The conveyance of May 5, 1952 referred to in this deed is the timber option.

The second deed executed by Dixon as a part of the court settlement on the same date is, in substance, as follows:

"Know all men by these presents, that M. C. Dixon Lumber Company, * * * for and in consideration of One Dollar and other good and valuable consideration, in hand paid to it by J. C. Mathi-

son, the receipt thereof being hereby acknowledged, does hereby, grant, bargain, sell and convey unto the said J. C. Mathison an undivided half interest in and to all oil, gas, bauxite and other minerals in, on and under the following described lands situated in Henry County, Alabama, to-wit:" the 1380 acres are then described.

"And there is also hereby conveyed the bonus, rentals and royalties which may be due or become due and payable for the property and interest and rights hereby and herein conveyed.

"*It is grantor's purpose and intent to hereby convey all rights, title, interests and privileges acquired by said grantor, or accruing to it, under and by virtue of that certain conveyance executed by J. C. Mathison and Eudine Mathison on December 28, 1953, * * *.* (Emphasis added).

"To have and to hold said property, rights and privileges unto the said J. C. Mathison, his heirs and assigns forever."

The conveyance which is described as having been executed on December 28, 1953 is the mineral deed previously described.

In 1956, an attorney for Harbison-Walker Refractories Company in examining the title of Mathison to the 1380 acres, or a portion thereof, relative to a client taking a lease between his client and Mathison, found what he considered to be legal defects in the notarization of the instruments executed by Dixon in 1955.

To remedy these defects the attorney for Harbison-Walker prepared a quitclaim deed to the 1380 acres, which was signed by Dixon on November 20, 1956, at the request of such attorney and without the payment of any consideration to Dixon.

The quitclaim deed is, in substance, as follows:

"WHEREAS, on May 5, 1952, J. C. Mathison and wife executed a mortgage

on the hereinafter described real estate to M. C. Dixon Lumber Company, * * * and whereas said J. C. Mathison and wife executed a mortgage on the hereinafter described real estate to M. C. Dixon Lumber Company, Inc. dated December 28, 1953, * * * and,

"WHEREAS, both of the said above named mortgages were satisfied by a Power of Attorney from M. C. Dixon Lumber Company, * * * and whereas said Power of Attorney is defective in its execution and acknowledgment, and whereas the grantor herein desires to correct said defects; and,

"WHEREAS, M. C. Dixon Lumber Company, Inc. conveyed to J. C. Mathison all its interest in and to all gas, oil, bauxite and other minerals in or upon the hereinafter described real estate by a mineral deed dated August 16, 1955, * * * and whereas, the acknowledgment of said mineral deed is defective, and whereas, the grantor herein desires to correct said defect; and,

"WHEREAS, M. C. Dixon Lumber Company, Inc. executed a timber deed conveying all pine and hardwood timber of every kind on the hereinafter described real estate to J. C. Mathison dated August 16, 1955, * * * and whereas the acknowledgment of said timber deed is defective and whereas, the grantor herein desires to correct said defect; and,

"WHEREAS, M. C. Dixon Lumber Company, Inc. did execute to J. C. Mathison and wife a cancellation of an option to purchase the hereinafter described real estate, said cancellation being dated August 16, 1955, * * * and whereas the acknowledgment of said cancellation is defective and it is the desire of the grantor herein to correct said defect; and,

"WHEREAS, it is the desire and intention of the grantor herein to release

all its right, title and interest of any kind in and to the hereinafter described real estate or the timber and minerals found thereon.

"NOW, THEREFORE, IN CONSIDERATION OF THE PREMISES, The said M. C. Dixon Lumber Company, * * * does hereby release, remise, quit claim and convey to the said J. C. Mathison and wife, * * * all its right, title and interest in and to the following described real estate situate in Henry County, Alabama, to-wit:" the 1380 acres are then described.

The deed then states:

*"It is the intention of the grantor to release all its right, title and interest in and to said real estate which it has or might have by virtue of said above mentioned mortgages, * * * or by virtue of that certain mineral deed executed by J. C. Mathison and wife to the grantor dated December 28, 1953, * * * or by virtue of that certain timber deed executed by J. C. Mathison and wife to the grantor dated May 5, 1952, * * * or by virtue of that certain option executed by J. C. Mathison and wife to the grantor dated December 28, 1953, * * *."* (Emphasis added).

"TO HAVE AND TO HOLD to the said J. C. Mathison and wife, Eudine Mathison, their heirs and assigns, forever."

The subject forty acres are wooded land, wild and unfenced, rolling, rough, cut by gullies, and have not been cultivated except for one acre.

Mathison testified as to the possession by him of such land as follows: "Well, the only thing we have ever done was the boys cut stack poles over there and hauled light wood out."

The testimony of "the boys," who were tenants of Mathison, was that the stack poles were cut in 1953 and 1954, and the lightwood "was hauled out until 1957."

Mathison introduced an affidavit of two elderly witnesses, recorded in the probate court August 17, 1955, to the effect that the affiants were familiar with the subject property, that Mathison had purchased such property June 14, 1948, from A. J. Palmer, and that Mathison together with his successors in title, A. J. Palmer and S. R. Vann, had been openly in continuous possession thereof for over twenty years, and that Mathison owned the land and he and those under whom he claimed had possessed it adversely and continuously for over twenty years and that there were no outstanding claims against the property. Both affiants were deceased at the time of the trial.

The timber on the subject land was cut by an agent for Sam T. Jones in 1950, and Jones had rented one acre to a tenant for cultivation about 1951 or 1952. This same tenant rented this acre for four years from Dixon from about 1954.

The boundaries of the subject property were blazed and painted by Dixon in about 1960. In 1957 Dixon, through its agents, placed concrete corner posts on the land and marked witness trees for the posts and also painted signs on the land.

The tenant, who had rented the one acre, testified that he bought the forty-acre tract immediately north of the subject property in 1949 from Mathison as a part of the Palmer land.

The subject property was assessed for taxation from 1936 to 1952, inclusive, by Sam T. Jones or his predecessors in title. Dixon assessed the property annually from 1953 through 1967, and Mathison also assessed it from 1956 through 1967.

Mathison testified that in the court settlement in 1955 he paid Dixon a total of $15,000.00, of which the sum of $13,300.00 constituted the principal and interest, and the balance of $1,700.00 represented the value of the growth of timber on the 1380 acres during the period that the option to purchase timber was in effect. He testi-fied that he had been familiar with the subject property since about 1919 and he had no knowledge of anyone cutting timber therefrom except as authorized by him, nor had he ever known of anyone cultivating any part of the land.

On August 18, 1955, Mathison executed a mortgage to a Dothan bank on the 1380 acres and on August 25, 1955, a mineral lease to Harbison-Walker Refractories Company.

■ The evidence in the trial court having been taken by deposition before a commissioner, the appellate court indulges no presumption in favor of findings of fact by the trial court but must sit in judgment on the evidence. Machen v. Wilder, 283 Ala. 205, 215 So.2d 282; Smith v. Dalrymple, 275 Ala. 529, 156 So.2d 622.

■ The evidence having been presented to the trial court, sitting in equity, the trial court and appellate court can consider only such evidence as is relevant, material, competent and legal. Section 372(1), Title 7, Code of Alabama as recompiled 1958; Shade v. Shade, 254 Ala. 195, 48 So.2d 39; Barry v. Thomas, 273 Ala. 527, 142 So.2d 918.

■ As to a suit in equity to quiet title, the complainant must show peaceable possession, either actual or constructive. Chestang v. Tensaw Land and Timber Company, 273 Ala. 8, 134 So.2d 159; and a scrambling possession will defeat recovery. Chestang v. Tensaw Land and Timber Company, supra.

Dixon argues that the deeds it executed were not intended to convey title to the subject property, and that the record title is in it.

Mathison argues that the final decree in his favor is sustained by the deed from A. J. Palmer, adverse possession of ten years and twenty years, and the quitclaim deed. He also argues that the timber and mineral deeds of August 16, 1955, in all events,

conveyed the timber and one-half the mineral interest to him.

■ We find that Dixon had peaceable possession of the land at the time suit was filed. Its possession was such use and dominion as the nature of the land admitted. Brand v. United States Car Co., 128 Ala. 579, 30 So. 60; Walthall v. Yohn, 252 Ala. 262, 40 So.2d 705; Ellis v. Womack, 247 Ala. 254, 23 So.2d 859.

■ That the right to possession may be denied does not destroy the effect of peaceable possession. Dawsey v. Walden, 243 Ala. 93, 8 So.2d 417; Jordan v. Mc-Clure Lumber Co., 170 Ala. 289, 54 So. 415.

■■ The deed to Mathison from A. J. Palmer conveyed no title to the subject property. A deed that describes land by governmental subdivisions does not convey other land or an area outside of such description. Brown v. Powers, 167 Ala. 518, 52 So. 647; Alford v. Rodgers, 242 Ala. 370, 6 So.2d 409; Lay v. Phillips, 276 Ala. 273, 161 So.2d 477.

And this is true even though the land is also described in the deed as having belonged to a named individual. Garner v. Morris, 187 Ala. 658, 65 So. 1000; Pettit v. Gibson, 201 Ala. 177, 77 So. 703.

■ In viewing the question of adverse possession the rule is that as against a legal title, to work a divestiture thereof there must be actual occupancy, clear, definite, positive, notorious, continuous, adverse and exclusive for the requisite period, under claim of right of a definite tract, and the burden is on those claiming adversely to establish this by clear and convincing evidence. Walthall v. Yohn, supra.

The rule of law as to prescription through twenty years of continuous user without recognition of adverse rights is set forth in State v. Broos, 257 Ala. 690, 60 So.2d 843; Walker v. Coley, 264 Ala. 492, 88 So.2d 868.

As against the record title the party relying upon adverse possession has the burden of proving a superior title by adverse possession. Machen v. Wilder, supra.

■ The record does not support the claim of Mathison under Title 7, Section 828, Code of Alabama, 1958 as recompiled, of ten years adverse possession prior to commencement of suit.

The deeds of 1955 and 1956 do not give him ten years color of title prior to commencement of the suit; nor does his assessment of taxes starting with 1956 give him ten years of assessments prior to commencement of suit.

■ In order for adverse possession to confer or defeat title under Section 828, supra, it is necessary that at least one of the alternatives in the section be complied with. Lowrey v. Mines, 253 Ala. 556, 45 So.2d 703.

■ Nor do we think that the claim of twenty years adverse possession can be sustained. This claim dates from 1948, the year in which he claims to have purchased the land, which does not give him twenty years. But he argues that his claimed possession should be tacked to that of his predecessors in title, A. J. Palmer, S. R. Vann, and that the affidavit is legal testimony and shows an adverse possession in the land for over twenty years in him and his predecessors prior to 1955.

Passing over the question of whether adverse possession can be tacked on to that of the grantor under a deed which does not describe the property, as was also passed over by the court in Machen v. Wilder, supra, we think that the record does not sustain the claim of adverse possession of twenty years. The recorded affidavit cannot be considered as proving this fact.

■ As a general rule affidavits are inadmissible in evidence. State ex rel. Bailes v. Guardian Realty Company, 237.

Ala. 201, 186 So. 168; Harrison v. Baker, 260 Ala. 488, 71 So.2d 284.

But recorded affidavits are admissible in evidence under limited conditions in litigation over the land referred to in the affidavits. Sections 116 and 117, Title 47, Code of Alabama 1958, as recompiled. These statutes, however, are in derogation of rights which are commonly secured to litigants and are strictly construed and do not extend to ex parte affidavits introduced for the purpose of proving title by adverse possession. Stewart Brothers v. Ransom, 204 Ala. 589, 87 So. 89. The affidavit is incompetent as evidence to support the claim of adverse possession, and the record fails to show other evidence sufficient for this purpose.

Moreover, the possessory acts of Mathison over the subject property were not enough to establish title by adverse possession as against the legal owner. Turnipseed v. Moseley, 248 Ala. 340, 27 So.2d 483, 170 A.L.R. 882; Prestwood v. Hunt, 285 Ala. 525, 234 So.2d 545; Weston v. Weston, 269 Ala. 595, 114 So.2d 898; Walthall v. Yohn, supra.

Certain testimony in the record cannot be considered because of the rule that ownership and possession of land are each facts to be proved by evidence as other facts are proved and neither can be proved by general notoriety nor by reputation. Weston v. Weston, supra.

Mathison at no time has held title or interest in the subject property unless he acquired it by deed or deeds from Dixon. We now consider the effect of the three deeds executed by Dixon. If the quitclaim deed conveyed all of Dixon's interest in the subject property, the decree of the trial court is correct.

A quitclaim deed passes to the grantee all right, title and interest possessed by the grantor at the time of its execution. Heath v. Scarborough, 248 Ala. 302, 27 So.2d 632.

Should the quitclaim deed fail to pass the title to Mathison, the question would remain whether the two deeds of 1955 vested in him the title to the timber and one-half interest in the minerals.

In our opinion, the applicable rule of construction of these three deeds is found in Hardee v. Hardee, 265 Ala. 669, 93 So. 2d 127:

"The real inquiry in construing the terms of a deed is to ascertain the intention of the parties, especially that of the grantor, and if that intention can be ascertained from the entire instrument, including its several parts, resort to arbitrary rules of construction is not required. And it is the duty of the court under this rule of construction to reconcile the terms of the instrument, if that may reasonably be done, to avoid a repugnancy in its provisions or terms. * * *"

Also, the rule that where one deed refers to another deed, both are properly considered together. Turk v. Turk, 206 Ala. 312, 89 So. 457.

We believe that the provisions of the quitclaim deed can be reconciled with one another in such way as to give effect to each of them. The provision expressing an intent to limit the title or interest conveyed is reconcilable with the general provision of conveyance, and not repugnant thereto. The effect of the limiting provision is to add greater certainty to the general. We hold that the intent gathered from all the provisions of the quitclaim deed is that the grantor, with respect to the described property, was reconveying only such title or interest as had been previously received from the grantee under and by virtue of the conveyances described in the quitclaim deed. The intent was not to reconvey a greater or different title or interest than had been received.

If no title were received, then none was to be reconveyed. Such interpretation har-

monizes all the provisions of the deed; and in our opinion expresses the intent of the parties, especially the grantor.

The quitclaim deed did not convey to Mathison any title or interest in the subject property since Dixon had received no title or interest therein from any conveyance by Mathison. Keith v. Woodruff, 136 Ala. 443, 34 So. 911; Gulf Oil Corporation v. Deese, 275 Ala. 178, 153 So.2d 614.

The same reasoning is applicable to the two deeds of 1955. The limiting provision is substantially the same in these three deeds and is clear and unequivocal, and we think the effect is the same. This intent is not changed by payment of the consideration of $1,700.00 to cover the growth of timber on the 1380 acres during the existence of the timber option. We think the intent of each of these three deeds, gathered from the four corners of the instruments, was to place Mathison in the same position with respect to his interest in the 1380 acres that he occupied prior to his executing the several conveyances to Dixon.

We hold, therefore, that the two warranty deeds conveyed no title to Mathison in the subject property. Gulf Oil Corp. v. Deese, supra; Graves v. Wheeler, 180 Ala. 412, 61 So. 341; Gentle v. Frederick, 234 Ala. 184, 174 So. 606.

Cases such as Hanners v. Hanners, 262 Ala. 143, 77 So.2d 484, involving a deed in which the granting clause conveyed an absolute fee are not applicable; nor the case of Johnson v. Harrison, 272 Ala. 210, 130 So.2d 35, involving a deed which imported a fee simple title in all its clauses except for "an unintelligible and nonsensical phrase."

It is urged on this appeal that the amended bill fails to state with precision the facts constituting the alleged mistake claimed by complainant to have occurred in executing these deeds and also fails to allege that the mistake occurred without negligence on the part of the complainant, citing Pearson v. Dancy, 144 Ala. 427, 39 So. 474.

But we do not pass upon this issue because the appellant did not test the legal sufficiency of the amended bill and the case was tried in the lower court on the issues as made by the pleadings. This contention comes too late.

A case will not be reviewed upon a different theory from that upon which it was tried below. Weston v. Weston, supra; Auto Owners Insurance Co. v. Stokes, 284 Ala. 537, 226 So.2d 320; Thompson v. Odom, 279 Ala. 211, 184 So. 2d 120.

It follows that the trial court erred in rendering a decree for the appellee. Decree should be rendered for the appellant, but as a condition thereof the appellant should be required to refund to the appellee, with interest, the proportional share of the $1,700.00 paid for the growth of timber on the 1380 acres as allocated to the forty-acre subject tract.

One seeking to cancel an instrument in equity must do equity by restoring any consideration he may have received thereunder. Hammock v. Oakley, 228 Ala. 588, 154 So. 906.

The decree is reversed and the cause remanded for the lower court to enter a decree in accordance with this opinion.

This opinion was prepared by Circuit Judge Gardner F. Goodwyn, who was appointed to temporary duty on the Supreme Court by the Chief Justice, and adopted by this court as its opinion.

Reversed and remanded with directions.

HEFLIN, C. J., and MERRILL, HARWOOD, MADDOX and SOMERVILLE, JJ., concur.