BRADLEY, Judge.
This appeal is from a judgment of the Circuit Court of Jefferson County, Bessemer Division, denying a use variance request by Alabama Power Company to remodel and expand its electrical substation in Hueytown, Alabama.
These proceedings commenced when Alabama Power Company applied to the Huey-town Board of Zoning Adjustment for a variance to its zoning ordinance so that Alabama Power might enlarge an electrical substation that it had maintained on a parcel of property since 1948. After several hearings the Zoning Board granted the application for a variance to the zoning ordinance for the enlargement of the electrical substation. Several landowners who lived adjacent to or near the substation appealed the decision to the circuit court. The landowners’ (Robert and Beulah Warren, Jessie and Estelle Wyatt, and Raymond Walker) appeal was tried de novo before the court and a jury. After the presentation of evidence by both sides, the jury returned a verdict denying the request for a variance. Prom that verdict and judgment thereon and the denial of the motion for new trial, the Zoning Board appeals.
The evidence shows that Alabama Power owns and operates an electrical substation on a parcel of property in an area of Huey-town zoned for residential purposes. This substation was in operation prior to the enactment of the present zoning ordinance. Moreover, the zoning ordinance permits a “public utility structure(s), such as electrical substation(s)” in R-2 residential zones. Nevertheless, Alabama Power specifically sought a variance so that it might remodel and enlarge the substation in order to furnish expanded service to its customers even though permitted uses were authorized in the R-2 residential zone.
*1123 The landowners offered evidence showing that an enlargement or expansion of the substation would have a detrimental effect on the value of their property. Further, the landowners were concerned about the noise that would be emitted by the transformers in the substation. Moreover, the landowners expressed concern for the safety of the people occupying the property surrounding the substation. They testified to instances of transformers exploding and wires falling and arcing between the substation and Booklane Drive. There was also testimony that there were other lots available in Hueytown which would be more suitable to Alabama Power’s needs and less harmful to the surrounding property owners. The Power Company disputed the availability of other suitable lots for the expanded substation.
The first issue we will consider is the Zoning Board’s contention that the trial court committed reversible error in refusing to allow the introduction into evidence of the transcript of proceedings made before the Board at the original hearing.
Title 37, section 783, Code of Alabama 1940 (Recomp.1958) (currently found in Title 11, chapter 52, section 81, Code of Alabama 1975) provides that:
“Any party aggrieved by any final judgment or decision of such board of zoning adjustment may within 15 days thereafter appeal therefrom to the circuit court by filing with such board a written notice of appeal specifying the judgment or decision from which the appeal is taken. In case of such appeal such board shall cause a transcript of the proceedings in the action to be certified to the court to which the appeal is taken, and the action in such court shall be tried de novo.”
The de novo hearing provided for in section 783 envisions an entirely new hearing before the circuit court in matters involving a use variance application. The circuit court sits as the Board of Zoning Adjustment and proceeds as if no hearing has ever been held. And, as a consequence, the applicant for a use variance has the burden of proving again its need for the variance.
In view of the type proceedings to be had in the circuit court, we are unable to perceive the efficacy of certifying the transcript of the Hueytown Board of Zoning Adjustment proceedings to the circuit court other than to permit a better understanding of the issues before the circuit court. Former Chief Justice Heflin commented in Fulmer v. Board of Zoning Adjustment, 286 Ala. 667, 244 So.2d 797 (1971) that:
“. . . [0]ne of the reasons for the requirement that a transcript of the proceedings before said board be certified to the court is to inform the court of the issues involved.”
In our view, this is the only real function of the statutory requirement that the transcript be certified to the circuit court, j. e. to delineate the issues before the circuit court. Furthermore, we are convinced, that the transcript would have no evidentiary value in view of the de novo type hearing to be conducted in the circuit court. In the instant case the circuit court was adequately apprised of the nature of the proceeding before it. It also heard testimony and accepted other evidence from the plaintiffs and defendants in accordance with a de novo hearing. Consequently, the parties cannot complain that the court was not aware of the issue to be tried nor that they did not have the opportunity to present evidence to support their contentions. Accordingly, the circuit court will not be held in error for refusing to admit the transcript of the proceedings before the Board of Zoning Adjustment into evidence during the hearing before the circuit court since it has not been shown that the Power Company was prejudiced by the circuit court’s action.
The next argument advanced by the Board concerns its claim that the trial court erred by giving to the jury the following written requested charges:
“4. The Court charges the jury that to grant to Alabama Power Company a variance you must find that the design of structures and facilities on the substation site conform as closely as possible to the character of the area or neighborhood, so *1124 that the facilities or structure will not adversely affect the safe and comfortable enjoyment of nearby properties or adversely affect the value of such property.”
“6. The Court charges you that public necessity is not shown by mere proof that the location is appropriate and the need for installation is great, or that the location which has been selected would enable one to provide cheaper service or is more economically feasible, but.it must be demonstrated that the proposed need is necessary to enable one to render both safe and adequate service and that no alternative site is available which would be less disruptive of the community’s zoning plans.”
“10. The Court charges you the jury that before you can grant Alabama Power the variance that Alabama Power has applied for you must be reasonably satisfied from the evidence that the [proposed] site is necessary to enable a company to render safe and adequate service, and that no alternative sites are available which could be used with less disruption of the community’s zoning plan.”
Title 37, section 781, Code of Alabama 1940 (Recomp.1958) (currently found in Title 11, chapter 52, section 80, Code of Alabama 1975) gives to boards of zoning adjustment the power:
“. . . to authorize ... in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done. . . ”
As can be seen from section 781, the criteria used in deciding whether a variance should be granted depends on whether the denial of the variance will cause the person seeking it undue hardship. An examination of the three disputed charges demonstrates that each is related to and involves to some extent a determination of whether the Power Company would suffer undue hardship in the event that its application for a variance was denied.
In their brief the landowners suggest that the Board is not really complaining about the correctness of the law contained in these instructions, but is, in fact, saying that the trial court should not have instructed the jury on use variances since the Power Company’s application actually involved the law of special uses.
The Power Company’s reliance on the law of special uses was apparently premised on the fact that the Hueytown zoning ordinance allows the granting of special or permissible uses by the Zoning Board. And the standards or criteria for the issuance of special or permissible uses are generally less stringent than those applied in the case of a variance.
However, an examination of the record in this case indicates that the Power Company applied for a variance rather than a special use. In fact, we are convinced that from beginning to end the proceedings below were conducted by the parties and the trial court on the premise that a variance had been requested. Moreover, despite the fact that at the conclusion of the trial court’s oral charge, counsel for the Board objected to the court’s instructions on the law of variances and pointed out that it had requested instructions relating to the granting of special permits by the Zoning Board, we are not persuaded that the instructions of the trial court regarding standards applicable to variance law were in error. Indeed, the trial court gave a number of written instructions which the Board (or the Power Company) had submitted and which pertained to permits for special uses. And although the court took such action at the request of the Board (or the Power Company), we should note that the written charges submitted by those parties did not attempt to delineate or distinguish the legal aspects of variance law from that of special uses. Nor did their requested instructions offer sufficient information to have enabled the jury to find that the Power Company was seeking a special use rather than a variance.
*1125 In view of the theory of the case adopted and followed by the parties and trial court throughout the de novo proceedings, we cannot, at this late date, say that the trial court erred in giving to the jury the above enumerated charges on variances. To have changed the theory of the case at the stage of the proceedings when the jury was receiving its instructions would have caused actual prejudice to the opposing party (landowners) and have so confused the issue for the members of the jury that a proper verdict could not have been rendered. See Rule 15, ARCP and committee comments thereto. We find no error in the giving of the charges in question.
The Board also contends that the trial court erred in admitting into evidence certain photographs and testimony relevant to the availability of alternate sites which could be used for the purpose of building an entirely new substation. The landowners reply that such evidence was admissible to prove an essential element of the variance issue, i. e. that before it can be determined if unnecessary hardship would result to an applicant for a variance, the issuing authority must be convinced that no satisfactory alternate sites are available.
Again the question is whether the evidence presented was relevant to the issue being tried. As previously stated, the issue or theory on which this case was tried was that of a variance and the evidence regarding alternate sites pertained to the question of whether the denial of a variance would work an unnecessary hardship on the Power Company. In keeping with the theory of the case, we can perceive no error on the part of the trial court in admitting into evidence the photographs and testimony alluded to above.
The remaining issues argued by the Board in its brief appear to this court to be a request that we placed the trial judge in error for refusing to change the theory of the case from one of variance to one involving a permissible or special use.
As stated before, it is clear to this court that the case here was tried below as a variance and not as an application seeking a special or permissible use. In this posture we cannot now say that the trial court erred because it refused to substitute one theory of law for another theory of law on the ground that the case was tried according to principles applicable to the latter. Should we accede to such a request, we would be reviewing the case on a theory different from that on which it was tried. This we cannot do. See Bailey v. City of Mobile, 292 Ala. 436, 296 So.2d 149 (1974); M. C. Dixon Lumber Co, v. Mathison, 289 Ala. 229, 266 So.2d 841 (1972).
In the absence of reversible error, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.